JACK HEALY *et al.*, Plaintiffs-Appellants, v. OWENS-CORNING FI-BERGLAS *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—88—1464

Opinion filed June 21, 1989.—Rehearing denied September 11, 1989.

Terrence M. Johnson, of Chicago (Colleen M. Hickey and Thomas E. Brennan, of counsel), for appellants.

Williams & Montgomery, Ltd., of Chicago (Kevin J. Babb, Barry L. Kroll, and Lloyd E. Williams, Jr., of counsel), for appellee Eagle-Picher Industries, Inc.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Daniel J. Cheely, John A. Krivicich, and Kimberly Kentra Gralen, of counsel), for other appellees.

JUSTICE WHITE delivered the opinion of the court:

On October 24, 1983, plaintiffs John and Dolores Healy filed an action in the circuit court of Cook County in which they sought to recover damages for injuries sustained by John Healy while working with products containing asbestos and for loss of consortium. In their complaint, plaintiffs alleged that John Healy was employed by various Illinois companies to install and remove asbestos insulation and that he was exposed to asbestos products designed, processed, manufactured, sold and distributed by defendants.[1] On April 7, 1988, the circuit court entered an order granting summary judgment to defendants. The court found that John Healy's action was barred by the two-year personal injury statute of limitations (Ill. Rev. Stat. 1983, ch. 110, par. 13—202) and that Dolores Healy's action for consortium, being derivative of John Healy's action for personal injuries, was also barred.

Plaintiffs appeal from the order of the circuit court granting summary judgment to defendants and from an order of the court denying plaintiffs' motion for reconsideration. As grounds for reversal of the orders, plaintiffs argue that: (1) they filed their complaint less than six months after John Healy discovered that he was injured; (2) the balancing test enunciated in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, requires application of the discovery rule in asbestos liti-

---

[1]The complaint named 22 companies and corporations as defendants. Through various motions, the number of defendants has been reduced to nine. The companies and corporations which remain as defendants in this action are Owens-Corning Fiberglas, Eagle-Picher, Industries, Inc., the Celotex Corporation, Owens-Illinois, Inc., Pittsburgh Corning Corporation, Fibreboard Corporation, Keene Building Products Corporation, Keene Corporation, and Rock Wool Manufacturing Company and will be referred to collectively as the "defendants."

gation; (3) the circuit court's actions deprived plaintiffs of their right to a remedy for injuries suffered; (4) defendants' claim that John Healy does not suffer from asbestosis should estop them from asserting that plaintiffs should have known in 1978 that John Healy had asbestosis; and (5) the circuit court should have allowed plaintiffs and their daughter, Judy Healy Jennings, to testify at the hearing on the motion for reconsideration. For the reasons stated below, we reverse and remand.

FACTS

John Healy testified at his deposition that he was employed in the asbestos insulation industry on a part-time basis during the summer of 1946 and the summer of 1947. In January 1949, he began working in the industry on a full-time basis. His full-time work consisted of installation and removal of asbestos insulation. In 1973, he became aware of the hazards involved in working with products containing asbestos. He began wearing a face mask and protective clothing at work. In 1978, at the urging of his daughter, Judy Healy Jennings,[2] he had a chest X ray taken. His daughter explained to him that he should have an X ray taken every year because he worked with products containing asbestos. He had the X ray taken because he wanted to find out whether being an asbestos worker had in fact hurt his lungs. He was told that the X ray revealed an abnormality in his lungs and he considered the possibility that the abnormality was caused by his work with asbestos. However, he was not told by anyone that there was a connection between the abnormality and his occupation. In 1979 or early 1980, he had a second chest X ray taken at Christ Hospital. Again, the X ray revealed an abnormality in his lungs and he considered the possibility that the abnormality was caused by asbestos.[3] Again, he was not told by anyone that there was a connection between the abnormality in his lungs and his occupation.[4]

---

[2] Judy Healy Jennings was a technician in the radiology department of Christ Hospital where the X ray was taken. She joined the hospital in 1978 upon her graduation from college.

[3] However, John Healy testified several times at his deposition that the doctors that he consulted regarding the X rays always asked him whether he had had pneumonia as a child, a question that he could not answer. Pneumonia can result in extensive scarring of the lungs. John Healy testified that he did not consider the possibility that the abnormality was caused by his work with products containing asbestos because of the doctors' questions regarding pneumonia.

[4] Dr. Wall's notes regarding his examination of John Healy in 1980 indicate that: "Jack-Had recent chest X ray—awaiting comparison [with] prior X rays—shows fibrotic changes (L) base-pronounced." But there was no evidence that these notes were communicated to plaintiffs.

John Healy testified that on November 14, 1981, he attended a union meeting on the hazards of asbestos. At the meeting, he was screened for asbestos-related diseases. He had a chest X ray taken and submitted to a blood test and a urine test. The results of these tests were communicated to him in a letter from Dr. Irving J. Selikoff dated January 28, 1982. In the letter, Dr. Selikoff informed him that there was some problem with the chest X ray "in that what appeared to be a significant amount of scarring was seen in the left chest." Dr. Selikoff also told him that the pulmonary function tests results mirrored the fact that there were chest changes. But the blood and urine tests showed nothing unusual. Dr. Selikoff asked him to send all previous chest X rays for comparison. John Healy testified that he was concerned that the scarring was caused by his work with asbestos.[5] He forwarded the previous chest X rays to Dr. Selikoff and received a letter from Dr. Selikoff dated August 22, 1983, in which Dr. Selikoff stated that he could not tell whether certain variations in the test results were "associated with any potentially deleterious health effects."

John Healy testified further that he suffers from high blood pressure. Otherwise, he enjoyed good health prior to 1983. In April of 1983, he developed a chronic cough. Dr. Frank J. Wall, Jr., his family physician, suggested that he consult Dr. Richard H. Earle, a pulmonologist. He was examined by Dr. Earle sometime before June 29, 1983. Dr. Earle told him that he had lost 35% of his breathing capacity and that he had asbestosis. Thereafter, he consulted Dr. Anderson of the Mayo Clinic for a second opinion. John Healy testified at the first session of his deposition that Dr. Anderson confirmed that he had asbestosis. However, at the second session of his deposition[6] he testified that he could not recall what Dr. Anderson had told him was the cause of his lung problems. Furthermore, in a letter to Dr. Wall dated June 30, 1983, Dr. Anderson indicated that he was not certain of the etiology of John Healy's lung disease, although the disease seemed consistent with asbestos exposure.

John Healy testified that he has been a member of the asbestos

---

[5]We note that the letter from Dr. Selikoff was received by John Healy less than two years prior to the time that the plaintiffs filed their complaint. Thus, even if we assume that the letter from Dr. Selikoff gave notice to the plaintiffs of John Healy's medical condition, plaintiffs' action would not be barred by the applicable statutes of limitations.

[6]The deposition was in two sessions, the first on October 23, 1984, and the second on December 3, 1984. John Healy gave conflicting answers at the two sessions when asked what Dr. Anderson had told him regarding the cause of his lung problems.

workers' union since 1952. He receives a journal which is published by the union. He glances through the journal to see the subject of the articles and he reads some of the articles. He recalled seeing some green sheets[7] which had been inserted in the journal but he did not recall reading the green sheets.

John Healy also testified that two of his co-workers died between 1977 and 1980 and he was told that they died of asbestos-related diseases.

DISCUSSION

■■ ■ It is well established in Illinois that summary judgment should be granted with caution so that the right to a trial, where conflicting facts and inferences are weighed, is not usurped. Only when the pleadings, depositions and affidavits on file show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law, should a case be so decided. (*Aspegren v. Howmedica, Inc.* (1984), 129 Ill. App. 3d 402, 403-04, 472 N.E.2d 822; *Elliott v. Chicago Title Insurance Co.* (1984), 123 Ill. App. 3d 226, 231, 462 N.E.2d 640.) Moreover, the pleadings, depositions and affidavits on file must be construed most strongly against the moving party and most liberally in favor of the party opposing the motion for summary judgment. (*United Investors, Inc. v. Tsotsos* (1985), 132 Ill. App. 3d 175, 180, 477 N.E.2d 40.) The right of the moving party to summary judgment must be free from doubt and determinable solely as a question of law. (*Nolan v. Johns-Manville Asbestos & Magnesia Materials Co.* (1979), 74 Ill. App. 3d 778, 794, 392 N.E.2d 1352, *aff'd* (1981), 85 Ill. 2d 161.) In the instant case, we believe that genuine issues of material fact existed as to when plaintiffs knew, or reasonably should have known, both that John Healy was injured and that his injuries were wrongfully caused.

Initially, we note that plaintiffs filed their action in October 1983. Since the two-year personal injury statute of limitations applies to the action, the critical question is whether plaintiffs knew, or reasonably should have known, prior to October 1981, both that John Healy was injured and that his injuries were wrongfully caused. Consequently, any information or notice that plaintiffs received after October 1981 regarding John Healy's condition should not be considered in determining whether plaintiffs' action is barred.

John Healy's deposition testimony showed that he was aware of

---

[7]The green sheets were industrial health and hygiene reports which were inserted in the Asbestos Workers Journal.

the dangers involved in working with materials containing asbestos and he had chest X rays taken on two occasions between 1978 and 1980 to determine whether his health had been affected by his exposure to asbestos.[8] These X rays showed that he had an abnormality in his lungs. After receiving the results of the X rays, he considered the possibility that the abnormality might be caused by his exposure to asbestos. He also learned during this period that two of his co-workers died of asbestos-related diseases. This testimony constitutes evidence of John Healy's awareness that his lung condition might be connected with his exposure to asbestos. However, contrasted with this evidence is John Healy's deposition testimony that, with the exception of his high blood pressure, he enjoyed good health prior to 1983. He believed that the abnormality in his lungs might be connected with pneumonia because, in interpreting his X rays, his doctors always asked whether he had had pneumonia as a child. Not until April of 1983 was he specifically advised that he had asbestosis. Prior to that time, apparently he was never told that his lung abnormality might be related to his exposure to asbestos. John Healy's testimony constitutes evidence that prior to October 1981, plaintiffs did not know that John Healy was injured or that his injuries were wrongfully caused. We also note that as late as 1983, both Dr. Anderson of the Mayo Clinic,[9] and Dr. Selikoff, a well-known figure in the field of asbestos-related diseases, were uncertain as to the cause of John Healy's lung condition. This might be considered convincing proof that plaintiffs, who are laymen, reasonably could not have known of John Healy's injuries prior to October 1981. We believe that the testimony shows that triable issues of fact existed regarding plaintiffs' knowledge of John Healy's injuries and awareness of the connection to asbestos exposure. Consequently, summary judgment was inappropriate.

Our decision in the present case is supported by the holding in *Nolan v. Johns-Manville Asbestos & Magnesia* (74 Ill. App. 3d at 778).

---

[8]We have not considered the information communicated to John Healy by Dr. Selikoff since the X ray at issue was taken in November of 1981 and the results thereof were not available to John Healy until January of 1982.

[9]Defendants maintain that Dr. Anderson's letter to Dr. Wall cannot "legitimately be considered" because the letter is unauthenticated and is hearsay. Plaintiffs tendered the letter, as well as the remainder of John Healy's medical records, to the circuit court at the hearing on the motion for summary judgment. Plaintiffs relied upon the letter, without objection, in their argument against the motion for summary judgment. Moreover, in their argument on the motion for summary judgment, defendants invited the circuit court to examine John Healy's medical records. We believe that the letter may properly be considered on review. See *Miller v. St. Charles Condominium Association* (1986), 141 Ill. App. 3d 834, 838, 491 N.E.2d 125.

Nolan was employed as an asbestos insulator from 1941 until 1973. In 1957, he began experiencing a generalized weakness throughout his body, shortness of breath and a little more difficulty in climbing stairs and carrying heavy equipment and materials while working. Some of his co-workers also suffered from the same problems. Nolan was aware of the dangers of asbestos products and he thought that his health problems might be caused by the asbestos products. He had an X ray taken in 1957 and was told that "there were problems in the lung" that he should have a doctor look into. He was examined by his family physician, who told him that he had lung problems but did not specify what they were. His family physician referred him to a psychiatrist, who examined him and had X rays taken. The psychiatrist told him that he did have a lung problem but that it might be partly mental. In 1965, Nolan consulted his family physician because his complaints had become more pronounced. Nolan was told that he had pulmonary fibrosis but asbestosis was never mentioned to him. He did not ask what pulmonary fibrosis meant; however, he had a strong suspicion that his physical condition and his contact with asbestos and fibrous products were related. In 1968, Nolan's union began to publish The Asbestos Workers magazine. The magazine printed the results of tests conducted by Irving Selikoff that purported to establish a relationship between asbestos and lung problems. Nolan testified that the publication of Dr. Selikoff's articles made him more aware of the relationship between asbestos and pulmonary conditions. In 1973, Nolan consulted Dr. Robert C. Kloempken because he began spitting up blood. Dr. Kloempken performed certain tests on Nolan and informed him that he had asbestosis as well as tuberculosis. Dr. Kloempken testified that the history taken from Nolan showed that Nolan was told in 1957 that he had pulmonary fibrosis secondary to asbestosis. However, Dr. Kloempken also testified that he was not sure that Nolan had actually used the words contained in the history. Catherine V. LeBlang, a nurse, testified that she interviewed Nolan's wife in 1973. Her notes of the interview showed that Mrs. Nolan indicated that Nolan had been diagnosed in 1957 as having lung fibrosis from asbestos. Ms. LeBlang could not recall the words that Mrs. Nolan had actually used in the interview. Both Nolan and his wife denied that they told anyone that Nolan had been diagnosed in 1957 as having an asbestos-related disease. In a letter to a union representative dated June 23, 1973, Nolan wrote that he had a "lung biopsy that shows scar tissue & asbestos fibers *** something that has been known for years." (74 Ill. App. 3d at 784.) Based upon these facts, the circuit court granted the motion of the defendants for summary judgment.

On appeal, the appellate court reversed. The appellate court observed that portions of the evidence showed Nolan's awareness of a lung condition which could have been connected with his exposure to asbestos. However, the testimony also supported Nolan's contention that he did not know that he had contracted asbestosis before May of 1973. The appellate court concluded that "[t]hese conflicting evidentiary matters require that consideration and evaluation of weight to be accorded to each be resolved by a fact-finder." *Nolan*, 74 Ill. App. 3d at 793.

On appeal, the Illinois Supreme Court affirmed the holding of the appellate court. The supreme court noted:

> "The evidence is conflicting as to whether or when Nolan would have had sufficient information to reach [the conclusion that he had asbestosis before 1973]. The resolution of this question is not the province of this court. It is a question of fact, and in this case, a seriously disputed one. Accordingly, summary judgment, which requires that no genuine issues of material fact exist (Ill. Rev. Stat. 1977, ch. 110, par. 57), is not an appropriate remedy here." *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171-72, 421 N.E.2d 864.

Here, as in *Nolan*, there was some evidence supporting each of the opposite conclusions that the plaintiff was and was not aware of his lung condition and that it might be connected to asbestos exposure. The use of the summary judgment procedure to dispose of the complaint was improper in *Nolan* and is also improper in the case at bar.

We conclude that questions of fact existed as to when plaintiffs knew, or reasonably should have known, both that John Healy was injured and that his injuries were wrongfully caused. Thus, summary judgment in favor of defendants was improper. Because of this conclusion, we need not address the other arguments raised by plaintiffs on appeal. Accordingly, we reverse the order of the circuit court of Cook County entering summary judgment in favor of defendants, and we remand for further proceedings consistent with this opinion.

Reversed and remanded.

FREEMAN, P.J., and CERDA, J.,* concur.

---

*Justice Rizzi recused himself from this appeal. Justice Cerda read the briefs and listened to the oral argument tapes.