Robert **LOCKETT,**
**Plaintiff-Appellant-Cross-Respondent,**

v.

**OWENS-CORNING FIBERGLAS, et al.,**
**Defendants-Respondents-**
**Cross-Respondents.**

Nos. 57888, 57984.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 26, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 22, 1991.

Application to Transfer Denied
June 11, 1991.

Stephen H. Ringkamp, Robert David Huelskamp, St. Louis, Cingeree E. Williamson, Clayton, Jeffrey M. Glass, St. Louis, for plaintiff-appellant.

Kathrine Rogers, Kurt L. Rasmussen, Kay G. Noonan, Kansas City, for defendants-respondents.

Before SMITH, P.J., and CARL R. GAERTNER and SATZ, JJ.

SATZ, Judge.

In this action, plaintiff, Robert Lockett, is suing a number of corporate manufacturers and suppliers of asbestos, corporate-defendants, alleging his exposure to their asbestos products caused him to contract asbestosis. In their answers, all of these corporate defendants have pleaded, as an affirmative defense, that plaintiff is barred by the statute of limitations.

In a separate count, plaintiff is suing his original attorneys, defendant-attorneys, for legal malpractice. As to them, he alleges corporate-defendants have pleaded that his asbestosis claim is barred by the statute of limitations and, if this is a valid defense, then, defendant-attorneys were negligent in allowing the statute to run.

The trial court granted motions for summary judgment filed by corporate-defendants on the grounds that the statute of limitations had run. The trial court designated its judgment as final under 74.01(b). Plaintiff and defendant-attorneys appeal from this judgment.

The trial court also granted plaintiff's motion for a partial summary judgment against defendant-attorneys. This judgment prevents defendant-attorneys from disputing at trial the expiration of the statute of limitations as determined by the court in its summary judgments in favor of corporate-defendants. The trial court also designated this judgment as final under Rule 74.01(b). Defendant-attorneys appeal from this judgment.

The appeals have been consolidated. We affirm the summary judgments in favor of corporate-defendants and dismiss defen-

dant-attorneys' appeal from the partial summary judgment in favor of plaintiff.

## Procedural History

A description of the procedural history is necessary to set the issues in proper context.

In his original petition, plaintiff alleged his exposure to the asbestos-containing products of corporate-defendants caused him to contract asbestosis. In their answers, corporate-defendants pleaded, as an affirmative defense, that plaintiff's claim was barred by the applicable statute of limitations.

In his Answer to Interrogatories propounded by one of the corporate-defendants, plaintiff stated that he had been diagnosed with asbestosis by a Dr. Criscione during a hospitalization between November 19–21, 1979. Apparently, because of corporate-defendants' affirmative defense and plaintiff's Answer to Interrogatories, plaintiff's original attorneys, defendant-attorneys, withdrew from representation of plaintiff.

Plaintiff then filed an amended petition with four counts. Counts I–III are against corporate-defendants, with reallegations of his asbestosis claim. Count IV is against defendant-attorneys, alleging legal malpractice for failing to file the original petition within the period allowed by statute of limitations, if that statute was a bar. In their answers, corporate-defendants again pleaded the statute of limitations as an affirmative defense, and defendant-attorneys pleaded, as their affirmative defense, that the statute of limitations had *not* expired.

Defendant Owens–Corning Fiberglas (Owens–Corning) then filed a motion for judgment on the pleadings supported by plaintiff's Answer to Interrogatories. The other corporate-defendants joined in this motion. In the motion, defendant Owens–Corning contended, as corporate-defendants now do on appeal, that plaintiff knew he had asbestosis in November 1979 and, thus, his claim accrued then. However, he did not file his original petition until 1986, more than five years later, Owens–Corning

contended, and, thus, his claim was barred by the applicable statute of limitations.

In response, defendant-attorneys filed an affidavit of Dr. R. Barton Bridges in which he stated that he had examined a series of x-ray films of plaintiff's lungs taken between April 30, 1980 and August 23, 1988, with one undated, and the first evidence he found consistent with plaintiff having asbestosis was on a film taken on August 23, 1988. Plaintiff adopted this affidavit. The affidavit, plaintiff and defendant-attorneys argued, raised a genuine issue of whether plaintiff actually had asbestosis in 1979, and, therefore, they argued, Owens–Corning's motion should not be granted.

Owens–Corning and Eagle–Picher then submitted their motion for judgment on the pleadings. The trial court treated these motions as motions for summary judgment and granted them.

Subsequently, plaintiff filed a motion for partial summary judgment, requesting that defendant-attorneys be prevented from disputing at trial the expiration of the statute of limitations as determined by the court's grant of Owens–Corning's and Eagle–Picher's motions for summary judgments. Then, the other corporate-defendants filed motions for summary judgment. The court granted all of these motions and also struck the defendant-attorneys' affirmative defense.

The court designated all of its judgments as final for purposes of appeal under Rule 74.01(b). These appeals followed.

The parties have not changed their contentions on appeal. Dr. Bridges's review of some of plaintiff's x-rays and his affidavit based on his review were made some 10 years after Dr. Criscione's diagnosis. The basic issue is whether Dr. Bridges's affidavit may be used to question Dr. Criscione's diagnosis and, thus, raise a question of fact about the correctness of that diagnosis, sufficient to preclude the grant of the summary judgments based upon the expiration of the applicable statute of limitations. Before addressing this issue on the merits, however, we must dispose of several appellate procedural issues.

*Appellate Procedural Issues*

*Celotex's Bankruptcy*

■ Appellant, Celotex Corporation, filed a notice of bankruptcy with this Court.

The Bankruptcy Code provides, in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other proceeding against *the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title. (emphasis added).

11 U.S.C.A. § 362.

Courts have held that this section operates as a stay only to the debtor, but not to codefendants of the debtor. *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1330 (10th Cir.1984). We, therefore, sever Celotex Corporation from this appeal.

*Motion of Owens–Corning and Eagle–Picher*

Defendants Owens–Corning and Eagle–Picher have filed a joint motion to dismiss the appeals as to them. As to plaintiff's appeal, they argue that plaintiff did not properly perfect his appeal. As to defendant-attorneys' appeal, they argue that defendant-attorneys are not aggrieved by the summary judgments granted corporate-defendants. We disagree with both contentions, and, for the reasons following, we deny their motion.

*Plaintiff's Appeal*

■ As noted in the procedural history, the trial court granted Owens–Corning's and Eagle–Picher's motions for summary judgment in its first order. In its second order, it granted the remaining corporate-defendants' motions for summary judgment along with its grant of partial summary judgment to plaintiff. Plaintiff, in his notice of appeal, stated he was appealing from the trial court's second order without mentioning the trial court's first order. This failure, these corporate-defendants contend, is fatally defective and plaintiff's appeal as to them must be dismissed for lack of jurisdiction.

■ In *Allison v. Sverdrup & Parcel & Assoc.,* 738 S.W.2d 440, 443–444 (Mo.App. 1987), on similar facts, this Court allowed plaintiffs to appeal from an order despite the fact their notice of appeal did not specify the order. So long as a good faith effort is made to comply with the applicable rule, Rule 81.08(a), and the opposing party is not prejudiced, the appeal need not be dismissed. *Id.*

Here, Owens–Corning and Eagle–Picher have not shown how they are prejudiced by plaintiff's failure to include the order granting them summary judgment in his notice of appeal. They are aware of the precise issues in plaintiff's appeal. Although, they did not file a brief of their own, they were granted leave to adopt the brief filed by the other corporate-defendants.

Plaintiff has filed a motion with this Court seeking leave to amend his notice of appeal to include a reference to the trial court's first order granting summary judgment. In light of our denial of the motion to dismiss of these corporate-defendants, we deny plaintiff's motion as moot.

*Defendant–Attorneys' Appeal From The Judgments In Favor of Corporate–Defendants*

■ Corporate-defendants also argue the appeal by defendant-attorneys from the summary judgments granted in favor of corporate-defendants must be dismissed because defendant-attorneys are not aggrieved by those judgments. *See* § 512.020 RSMo 1986. We disagree.

A fact situation parallel to the present facts arose in *Listerman v. Day and Night Plumbing & Heating Service,* 384 S.W.2d 111, 119 (Mo.App.1964). That case was a

third-party action. The plaintiffs obtained a verdict against the defendant, and the defendant, as third-party plaintiff, obtained a verdict against the third-party defendant. Only the third-party defendant appealed. But, he appealed both verdicts. In holding the third-party defendant was aggrieved by the verdict against the original defendant, the court stated, "on the instant record, [third-party defendant's] liability vel non to [third-party plaintiff] not only depended upon, but also followed as a shadow follows the object casting it, the liability vel non of [third-party plaintiff] to plaintiffs." *Id.* at 119.

Likewise, in the present case, defendant-attorneys' liability depends almost solely on whether plaintiff's claim against corporate-defendants is barred by the statute of limitations; as the effect of the statute of limitations goes, so goes the defendant-attorneys' liability.

Of course, defendant-attorneys will not be liable for malpractice if they have some other defense, but, likewise, the third-party plaintiff in *Listerman* was not automatically entitled to indemnification. 384 S.W.2d at 117–118.

### Defendant–Attorneys' Appeal From the Partial Summary Judgment On Count IV In Favor of Plaintiff.

■ In his malpractice action in Count IV, plaintiff seeks the enforcement of a single legal right against defendant-attorneys. The enforcement of this right rests on the resolution of, at least, two basic legal issues: the possible bar of the statute of limitations and the alleged negligent failure of defendant-attorneys to protect plaintiff from this bar. The partial summary judgment resolves the first but not the second of these issues, and it does not resolve the issue of damages. Nonetheless, the court designated this judgment as final for purposes of appeal under Rule 74.01(b).

The trial court's partial summary judgment on Count IV was not a judgment on a claim within the meaning of Rule 74.01(b) and, therefore, the court's designation was improper. Consequently, we lack jurisdiction to review defendant-attorneys' appeal of this judgment.

Rule 74.01(b) permits the trial court to designate as final a judgment "as to one or more claims but fewer than all of the claims." The minimum unit of disposition is, therefore, at least one claim. "The trial court is not authorized 'to enter final judgment on anything less than one claim for relief.'" *International Minerals & Chemical Corp. et al. v. Avon Products, Inc.*, Slip Opinion No. 57996 at 9 (E.D.Mo. App. March 12, 1991).

It is questionable whether a judgment, like the partial summary judgment here, which resolves fewer than all the legal issues included in a claim is a judgment on at least one claim as required by Rule 74.01(b). It is certain, however, that a judgment, like the partial summary judgment here, which fails to resolve the remedial issue of damages sought in that claim is not a judgment on at least one claim as required by that Rule. *International Minerals, supra; Davis v. Dolgencorp, Inc.*, 774 S.W.2d 565 (Mo.App.1989).

Accordingly, we dismiss defendant-attorneys' appeal from the partial summary judgment in favor of plaintiff.

### Statute of Limitations

Both plaintiff and defendant-attorneys contend Dr. Bridges's sworn statement raises a genuine issue as to whether Dr. Criscione's diagnosis was in fact correct. This dispute over Dr. Criscione's diagnosis, they contend, constitutes a genuine dispute of a material fact which precludes the trial court's finding that, as a matter of law, the diagnosis gave sufficient notice to plaintiff to trigger the statute of limitations.

Statutes of limitations are designed to ensure fairness to the defendant; to encourage prompt processing of claims; to suppress stale and fraudulent claims; and to avoid difficulties of proof created by delay. *See, e.g., Baron v. Kurn,* 164 S.W.2d 310, 317 (Mo.1942); *Bisesi v. Farm & Home S & L Ass'n of Mo.,* 78 S.W.2d 871, 873 (Mo.App.1935). Plaintiff's claim against corporate-defendants sounds in tort

and, thus, has a limitations period of five years from the date it accrued. § 516.120(4) RSMo 1986. The accrual date is fixed by § 516.100 which is designed to avoid the unjust results which may occur when the claim is said to accrue prior to the manifestation of harm. Thus, under § 516.100, a claim is not "deemed to accrue when the wrong is done or the technical breach of ... duty occurs, but when the damage is sustained and capable of ascertainment."

■ In common parlance, "capable of ascertainment" may be construed to mean capable of being ascertained by a reasonable person using reasonable diligence. That construction, however, is almost the equivalent of the so-called discovery rule. We, in Missouri, make a distinction between the discovery rule and our statutory phrase "capable of ascertainment" and construe the latter to mean the moment that plaintiff's damages are substantially complete. *See e.g., Jepson v. Stubbs*, 555 S.W.2d 307, 313 (Mo. banc 1977); Davis, *Tort Liability and The Statute of Limitations*, 33 Mo.L.R. 171, 87–88 (1968); *but see Martin v. Crowley, Wade & Milstead, Inc.*, 702 S.W.2d 57 (Mo. banc 1985).[1] Where, as here, the damage is a physical ailment, it is "sustained and capable of ascertainment," at the latest, when it is diagnosed. *See e.g., Ahearn v. Lafayette Pharmacal, Inc.*, 729 S.W.2d 501, 503 (Mo. App.1987).

A statute of limitations attempts to protect plaintiffs and defendants equally and fairly. *Baron, supra* at 317. For plaintiff's protection here, his claim did not accrue when corporate-defendants either manufactured or supplied their asbestos products, nor did it accrue when plaintiff was first exposed to these products. However, for corporate-defendants' protection, plaintiff's claim did accrue when asbestosis, the harm allegedly caused by the products, was "sustained and capable of ascertainment."

■ Corporate-defendants contend plaintiff's claim accrued when he was diagnosed by Dr. Criscione as having asbestosis. This diagnosis, they contend, established the harm to plaintiff, and, from his knowledge of the diagnosis, he knew of that harm. On this record, they contend, it was the fact plaintiff was so diagnosed that started the running of the statute of limitations and the statute ran its course regardless of the possible incorrectness of this diagnosis, learned after the period of limitations had run. We agree.

In *Elmore v. Owens—Illinois, Inc.*, 673 S.W.2d 434 (Mo. banc 1984), the plaintiff had been exposed to asbestos, had symptoms indicative of asbestosis and possessed the knowledge that exposure to asbestos could cause asbestosis. *Id.* at 436. However, the court held that plaintiff "did not know ... his condition was asbestosis until it was diagnosed by his physician...." *Id.*

> It was not until such diagnosis was made that the character of the condition (asbestosis) and its cause (breathing asbestos dust) first "came together" for the plaintiff.
>
> *Id.*

Subsequently, in *Ahearn*, 729 S.W.2d at 502–504, this Court addressed the issue of a medical diagnosis triggering the statute of limitations. In *Ahearn*, with the use of a dye as a contrast medium, mylegrams were performed on plaintiff from 1972 through 1975 to determine the extent of her back injuries. In 1975, after surgery, she was diagnosed as having adhesive arachnoiditis, but she did not learn of this diagnosis until 1981 or early 1982. In 1983, she "became aware of the causal connection" between her condition and the dye. *Id.* at 503.

In affirming a summary judgment in favor of the defendants, the Court held the statute of limitations was triggered in 1975, the time of the original diagnosis, even though plaintiff was unaware of that diagnosis. The Court noted that, as early as 1940, the medical community "was

---

**1.** In *Jepson,* the Court said the "capable of ascertainment" test cannot be equated with the discovery rule. *Jepson, supra* at 313. However, the Court's later opinion in *Martin* may have blurred this distinction. *Martin, supra* at 58, and concurring opinion of Welliver, J., at 60–65.

aware of the possible causation link between" plaintiff's condition and the use of the dye. *Id.* "[P]laintiff's damage was sustained and capable of ascertainment in 1975," the Court also said, "when she was diagnosed as suffering from arachnoiditis." *Id.*

Admittedly, in *Elmore* and *Ahearn,* there was no dispute about the correctness of the doctor's diagnosis. However, the teaching of *Elmore* and *Ahearn,* relevant here, is that a claim accrues, at the latest, when a diagnosis is made. Thus, plaintiff's asbestosis was "sustained and capable of ascertainment" in 1979 when Dr. Criscione made his diagnosis.

The statute of limitations contemplates plaintiff acting on his knowledge as a reasonable man, and he is given time to act with reasonable diligence to protect himself and his rights. To be fair, both to him and to the alleged violator of his rights, that time is limited to five years.

Nothing in the record before us shows plaintiff had any reason to doubt the correctness of Dr. Criscione's diagnosis before this five year statute of limitations expired in November, 1984. Plaintiff's petition was filed, however, some two years later, on July 9, 1986, and Dr. Bridges's affidavit is dated July 12, 1989.

The five years after Dr. Criscione's diagnosis was ample time for plaintiff, as a reasonable man, to exercise due diligence to protect himself and his rights. However, plaintiff waited to file suit for almost seven years after being told by his doctor he had asbestosis. Nearly three years later he attempted to show his failure to timely follow up on the diagnosis was reasonable. It is precisely this sort of delay in the prosecution of a claim that the statute of limitations is designed to prevent and from which the statute protects defendants.

### Plaintiff's and Defendant–Attorneys' Arguments

Plaintiff and defendant-attorneys make two basic arguments. First, defendant-attorneys contend plaintiff's Answer to Interrogatories has no evidentiary value. Second, both plaintiff and defendant-attorneys contend Dr. Criscione's diagnosis could not, as a matter of law, start the statute of limitations running because the diagnosis was disputed by Dr. Bridges's affidavit. Neither argument is persuasive.

### Plaintiff's Answer to Interrogatories

■ Plaintiff's Answer to Interrogatories stated that in November, 1979, Dr. Criscione diagnosed him as having asbestosis. Defendant-attorneys make several attacks on the evidentiary value of this Answer. They contend the Answer, as used by corporate-defendants, is hearsay, a self-serving statement and information not based on plaintiff's personal knowledge. Defendant-attorneys misconstrue corporate-defendants' use of the Answer, and, thus, their attacks miss the mark.

Defendant-attorneys couch each of their attacks in different legal jargon. The attacks, however, are all based upon the premise that plaintiff's Answer was used to prove the truth and validity of Dr. Criscione's diagnosis of asbestosis. It was not. It was used to show plaintiff knew that Dr. Criscione had so diagnosed him, and, therefore, the truth or falsity of the diagnosis is irrelevant. *E.g.,* M____ E____ v. M____ E____ E____, 715 S.W.2d 572, 574–75 (Mo. App.1986); *Mitchell v. Robinson,* 360 S.W.2d 673, 677 (Mo.1962).

■ Defendant-attorneys also contend there was no showing that Dr. Criscione was qualified to make a diagnosis of asbestosis. Defendant-attorneys stand this burden of proof on its head. It was, after all, the doctor of plaintiff's own choosing who made the diagnosis, and corporate-defendants simply use the information furnished by plaintiff's own choice. It is defendant-attorneys' burden to show their former client should not have relied on the doctor he chose. *DeFino v. Civic Center Corp.,* 780 S.W.2d 665 (Mo.App.1989).

### The Effect of Dr. Bridges's Affidavit

Both plaintiff and defendant-attorneys contend Dr. Bridges's sworn statement raises a genuine issue of whether Dr. Cris-

cione was in fact correct which precludes summary judgment for corporate-defendants. In support, plaintiff and defendant-attorneys cite a number of cases from other jurisdictions, most of which are collected in 1 ALR 4th 117–136 (1980), *When Statute of Limitations Begins To Run As To Cause Of Action For Development Of Latent Industrial Or Occupational Disease.* Most, if not all, the cited cases involve statutes of limitations which embody the discovery rule rather than the capable of ascertainment rule. Apparently, plaintiff and defendant-attorneys understand this. They cite these cases, however, for their teaching and not necessarily their precise holdings.

We have read the cited cases. They do address the issue of when the plaintiff knew or should have known of the disease in question, usually asbestosis. They are, however, consistent with our opinion here. They simply teach that the information a defendant relies on to show, as a matter of law, that a plaintiff knew or should have known he had asbestosis must be sufficiently definitive to have put a reasonable person on notice. Without that showing, the statute of limitation does not begin to run. *Aduddell v. Johns Manville Corp.,* 42 Wash.App. 204, 709 P.2d 822 (1985); *Trieschock v. Owens Corning Fiberglas Co.,* 511 A.2d 863 (Pa.Super.1986); *Healy v. Owens–Corning Fiberglas,* 187 Ill. App.3d 182, 134 Ill.Dec. 827, 543 N.E.2d 110 (1989); *Nolan v. Johns–Manville Asbestos & Magnesia Materials Co.,* 74 Ill. App.3d 778, 30 Ill.Dec. 307, 392 N.E.2d 1352 (1979); *Connaught Laboratories, Inc. v. Lewis,* 557 A.2d 40 (Pa.Cmwlth. 1989); *Hansen v. A.H. Robins Co., Inc.,* 715 F.2d 1265 (7th Cir.1983).

*Aduddell, Trieschock, Healy* and *Nolan* have similar fact patterns and holdings.

In *Aduddell,* the appeals court reversed a summary judgment for defendants. The doctor in question was not an expert at diagnosing asbestos-related diseases. He had stated that lung scarring of the plaintiff created a risk of cancer "if indeed [the scars] are due to asbestosis." *Id.* at 823. The court held this statement did not show the plaintiff knew or should have known, as a matter of law, that he had asbestosis. *Id.* at 825. The court pointedly noted that the doctor was not a specialist and did not purport to diagnose asbestosis. *Id.*

In *Trieschock,* in reversing a summary judgment under Wisconsin law, the court held the fact the plaintiff was told that asbestosis was suspected did not establish that he knew or should have known, as a matter of law, of the disease. 511 A.2d at 866. The court said the mere suspicion of asbestosis does not trigger the running of the statute of limitations, because "[a] plaintiff in a creeping disease case should not be required to have greater knowledge than his physicians about his medical condition." *Id.* at 865.

In *Healy,* in considering whether the plaintiffs' cause of action accrued more than two years before the action was filed, the court refused to take into account "any information or notice" the plaintiffs received less than two years before the filing. 134 Ill.Dec. at 830, 543 N.E.2d at 113. The court held the fact that chest x-rays showed "abnormalit[ies] in his lungs" and that plaintiff knew two co-workers died of asbestosis related diseases raised a jury question whether plaintiff knew or should have known of his asbestosis, especially since he was never specifically diagnosed with asbestosis. *Id.* 134 Ill.Dec. at 831, 543 N.E.2d at 114.

In *Nolan,* the plaintiff's doctors diagnosed him as having "unspecific inflammatory lung disease." He continued to seek medical advice but was not diagnosed as having asbestosis until 1973. In reversing a summary judgment for defendants, the court held there was a question of fact whether plaintiff knew or should have known of the disease before the 1973 diagnosis. 30 Ill.Dec. at 319, 392 N.E.2d at 1364. The court stated he diligently sought medical advise and he stated that "no one mentioned asbestosis to him." *Id.* 30 Ill.Dec. at 318, 392 N.E.2d at 1363.

Thus, where the discovery rule applies, these cases teach a less than certain diagnosis will not necessarily trigger the statute of limitations and, consequently, will

not support a time bar which was imposed as a matter of law.

The facts of the present case are significantly different. Corporate-defendants here are not relying on some generalized information plaintiff had to start the statute of limitations running. They rely on Dr. Criscione's specific diagnosis of asbestosis in 1979. There is nothing in the record to suggest this diagnosis was preliminary or tentative. And, Dr. Bridges's affidavit does not suggest the diagnosis was not certain in either Dr. Criscione's or plaintiff's mind.

Moreover, the lack of Dr. Criscione's credentials does not lessen the certainty of his diagnosis. On the present record, we must focus on the effect this certain diagnosis would have on a reasonable person, not its correctness or incorrectness. Indeed, plaintiff and defendant-attorneys had ample opportunity to show that Dr. Criscione lacked the credentials to make the diagnosis of asbestosis, that plaintiff knew of this deficiency, and that, therefore, plaintiff, as a reasonable person, would have no cause to believe the diagnosis was not definitive. *DeFino, supra,* 780 S.W.2d 665.

Likewise, plaintiff and defendant-attorneys are not aided by *Connaught Laboratories* and *Hansen, supra.*

In *Connaught,* a minor had a seizure in reaction to a series of vaccines, and a doctor told the minor's mother the seizure was a reaction to the drugs. 557 A.2d at 42. After a second seizure, the doctor changed his diagnosis and told the mother the seizures were unrelated to the vaccines because he believed seizures caused by the vaccine did not recur. *Id.*

Seven years later, upon hearing a report that the vaccine can cause recurrent seizures, the mother initiated the suit. The court held that the reasonableness of the mother's reliance on the second diagnosis was a jury question, and the court affirmed the denial of summary judgment against the plaintiff. *Id.* at 47.

In *Hansen,* the plaintiff's doctor first told her the atypical symptoms she had were not caused by an intrauterine device (I.U.D.), the "Dalkon Shield," manufac-

tured by the defendant. Two weeks later, another doctor attributed her symptoms to an infection caused by the I.U.D. In reversing a summary judgment for defendant, the court held that the plaintiff "acted diligently" after her first diagnosis and, therefore, "her claim accrued when the injury was discovered" by the second diagnosis. 715 F.2d at 1267.

Again, plaintiff and defendant-attorneys argue that these cases teach the diagnosis must be shown to be correct before it can trigger the running of the statute of limitations. They read too much into these cases.

In these cases, the court is simply applying a basic tort principle—a party's conduct is measured by the conduct of a reasonable person. Thus, in *Connaught,* the court decided a jury should determine whether the plaintiff acted reasonably after receiving contradictory diagnosis, and, in *Hansen,* the court decided the plaintiff acted reasonably after her first diagnosis. Given the information each of the plaintiffs had, it would have been unreasonable to require them to act differently than they did.

However, in the present case, plaintiff had no reason to question the diagnosis of Dr. Criscione. No evidence in the record shows any reasonable justification for plaintiff's inaction from 1979 until 1986. He knew the diagnosis of asbestosis was certain, and there is no reason shown by the record for him not to know tortious conduct caused his disease.

Plaintiff makes several other attacks on the use of Dr. Criscione's diagnosis to support the summary judgments. Again, the purpose of these attacks is to show a diagnosis must be correct, in truth and in fact, to trigger the statute of limitations.

Thus, plaintiff quotes a statement from *Ahearn, supra,* that "[t]he test to determine when a cause of action has accrued is to ascertain the time *when the plaintiff could have maintained the action to a successful result." Ahearn,* 729 S.W.2d at 503 (plaintiff's emphasis). Our courts use other language which they believe expresses the same principle: The cause of action accrues "when 'there exists the right of the injured party to bring and maintain a claim

in a court of law.'" *Linn Reorganized School Dist. v. Butler Mfg. Co.*, 672 S.W.2d 340, 343 (Mo. banc 1984). " '[T]he cause of action arises when the aggrieved person has the right to apply to the proper tribunal for relief.'" *DePaul Hospital v. Southwestern Bell Telephone Co.*, 539 S.W.2d 542, 546 (Mo.App.1976).

This general language and comparable language was taken from 54 C.J.S. Limitations of Actions, a compendium that collects and summarizes case law from the various jurisdictions. *See DePaul* at 546. The question here is what is the meaning of this general language in the present context.

To us, it means plaintiff's right to process his claim in court accrued when he was diagnosed by Dr. Criscione as having asbestosis. This diagnosis, made by the doctor whom plaintiff chose, informed plaintiff he had "sustained damaged," and, at the same time, insofar as plaintiff was concerned, the damage was "capable of ascertainment." At that time, the statute of limitations assured plaintiff he had access to the courts for five years. During that time he could do as he wished. But, to the extent his course of action would affect his access to the courts, he would be required to make that choice within five years. To us, that is the meaning of the quoted language in the present context, no more nor less.

Plaintiff also argues that his claim accrues only if two statutory requisites are met: (1) the damage must be sustained, and (2) the damage must be ascertainable. To accept corporate-defendants' position, plaintiff argues, would, in effect, write the first requirement out of the statute.

To define this argument in bold relief, plaintiff poses the question:

> Should an individual, whenever he or she suffers an injury, immediately file suit against all possible tortfeasors who may or may not have caused the injury, for fear that to wait could result in having *any* action time barred. (Plaintiffs emphasis).

Having framed the question to get the answer he wants, plaintiff answers with a simple: No.

The complete answer to this question, however, is: No; no immediate action is required; but, he is expected to act as a reasonable person in response to his own doctor's diagnosis. And, under the statute, a reasonable person is given five years to do so.

Moreover, plaintiff's position would effectively eliminate the statute of limitations. It would permit an individual, knowing he has been diagnosed with a disease, to sit on his rights for an indefinite period, and, at anytime within the indefinite period, he would be permitted to press his claim merely by casting doubt on the diagnosis with an opinion from another doctor whom plaintiff did not contact until after the statutory period had expired. This destroys the value of the statute of limitations as a statute of repose.

Finally, plaintiff argues that corporate-defendants' position "fails to account for the possibility of misdiagnosis and the unfair burden this exclusion places on the plaintiff." We disagree with plaintiff.

We agree with corporate-defendants based on our view fairness. We take people as they are and life as it is. We interpret our statute of limitations as granting a person five years to get to the courthouse after he receives a diagnosis from his doctor that is certain and not tentative. That is ample time, we believe, for a reasonable person to act to protect his rights. Conversely, we close the courthouse doors after these five years to protect the defendant from defending against a claim that five years has made stale.

We affirm the summary judgments in favor of corporate-defendants. We dismiss defendant-attorneys' appeal from the partial summary judgment in favor of plaintiff. We sever Celotex Corporation from this appeal.

We remand this cause to the trial court for further proceedings.

SMITH, P.J., and CARL R. GAERTNER, J., concur.