GILBERT L. HENDERSON *et al.*, Plaintiffs-Counterdefendants-Appellees and Cross-Appellants, *v.* TIMOTHY J. LEMNA *et al.*, Defendants-Counterplaintiffs-Appellants and Cross-Appellees.

Fourth District   No. 15439

Opinion filed September 17, 1979.

Lemna & Moore, of Tuscola, for appellants.

Hull, Campbell, Robinson & Gibson, of Decatur, for appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:

This case involves a contract whereby plaintiffs agreed to sell a lot to defendants, and also build a house on the lot for defendants. Each side maintains that the other anticipatorily breached the contract. Plaintiffs claim that defendants did so by refusing to "close" on the contract. After defendants' conduct which gave rise to this claim, plaintiffs declared the contract terminated and sold the house to another. Defendants maintain this to have been an anticipatory breach by plaintiffs. The parties also

dispute as to whether plaintiffs substantially performed the work required of them by the contract.

On March 11, 1976, plaintiffs brought suit for breach of contract against defendants in the circuit court of Macon County. Defendants counterclaimed, seeking a return of their $6500 down payment, and certain other damages not of significance here. After a bench trial a judgment in the sum of $13,943 was entered on October 16, 1978, in favor of plaintiffs and against defendants on the complaint and a judgment was also entered in favor of plaintiffs and against defendants as to the counterclaim. The trial court found that plaintiffs had substantially performed under the contract and that defendants had breached it. Defendants appeal. Plaintiffs cross-appeal, maintaining that their damages should have included expenses for reselling the house.

The contract was executed on June 13, 1975, and provided that the base price for the lot with house erected thereon would be $68,962 and stated that "Purchasers may make alterations and additions * * * provided such alterations and additions shall be paid for by purchasers at the seller's costs * * *." Substantial and expensive modifications were made at defendants' request. Plaintiff Gilbert L. Henderson testified that in November and December, the parties had started talking about "closing" the contract and discussed the amount to be paid to plaintiffs for the extra work. He stated that two or three meetings between him and his attorney and defendants and their attorney were held in January. He maintained that although all of his records were shown to defendants, little progress was made because defendants continually asked for more time to make up their mind as to whether the charges were proper. Henderson indicated a belief that defendants were stalling. Defendants disputed some of Henderson's testimony, but the trial court could have believed him.

On February 11, 1976, the parties and their attorneys met to discuss work to be done and payment to be made for extras. At this meeting, plaintiffs presented defendants with a closing statement setting forth charges for extras. After the meeting, plaintiffs' attorney wrote defendants telling them to meet on February 20, 1976, in order to close and telling them that if they would let Mr. Henderson know by 5 p.m. on February 17, 1976, that they would close, he would complete all work needing to be done by February 20, 1976, the date set in the letter for closing. The letter also advised that if the closing was not done, plaintiffs would declare a forfeiture and put the house on the market. On February 16, 1976, defendants' attorney wrote plaintiffs requesting further information and suggested a meeting on February 20, 1976, to discuss the costs of extras at which Mr. Henderson should bring the requested records. On February

18, 1976, a further letter from defendants' attorney to plaintiffs listed 23 items which had purportedly not yet been completed on the house. On February 20, 1976, Mr. Henderson refused to discuss further with defendants the charges for extras or to give them further access to his records. No closing took place on that day and plaintiffs put the house on the market the next day and eventually sold the house for $76,000.

Plaintiffs argue that defendants' conduct in not "closing" on February 20, 1976, and not giving an affirmative indication of an intent to complete the contract constituted an anticipatory breach justifying their treating the contract as terminated. In *Stonecipher v. Pillatsch* (1975), 30 Ill. App. 3d 140, 332 N.E.2d 151, cited by both sides, the court stated:

"In order to justify the adverse party in treating a renunciation as an anticipatory breach of a contract there must be a definite and unequivocal manifestation of intention that the party will not render the promised performance when the time fixed for it in the contract arrives. (Corbin on Contracts §973, at 960 (1952); Williston on Contracts §1322, at 130 (3d ed. 1968). See also *Palmiero v. Spada Distributing Company* (9th Cir. 1954), 217 F.2d 561, 566.) A definite statement to the promisee that the promisor either will not or cannot perform the contract will operate as an anticipatory breach. (Corbin on Contracts §959, at 941; Williston on Contracts §1322, at 134.) On the other hand, doubtful and indefinite statements that the performance may or may not take place or mere requests to change the terms of a contract are not, in and of themselves, enough to constitute repudiation. (Corbin on Contracts §973, at 960; Williston on Contracts §1322, at 133.) The construction of an oral contract and the acts and conduct of a party as modifying a written contract are matters for the trier of fact, and decisions reached on these issues are not to be disturbed unless contrary to the manifest weight of the evidence. See *Palmiero v. Spada Distributing Co.* (9th Cir. 1954), 217 F.2d 561, 565; *Siemans v. Thompson* (1973), 11 Ill. App. 3d 856, 858; *Sampson v. Marra* (1951), 343 Ill. App. 245, 256." 30 Ill. App. 3d 140, 142-43, 332 N.E.2d 151, 153-54.

*Stonecipher* involved a suit by vendees under a real estate sales contract in which they sued for a return of their down payment on the theory that the vendors had anticipatorily breached the contract. Evidence was presented showing that vendors had sought of vendees an extension of the date upon which they were to deliver possession. Upon vendees' refusal, vendors stated that they would not deliver possession until one month after the contract date. A judgment in favor of the vendees was affirmed on appeal.

The "closing" of a real estate sale has been defined as "the final steps of the transaction whereat the consideration is paid, mortgage is secured, deed is placed in escrow, etc." (Black's Law Dictionary (5th ed. 1979).) In demanding "closing" here, plaintiffs were obviously demanding that defendants make payment to them of the amount owed for the work they had done and intended that the deed would then be delivered to plaintiffs. Defendants requested further opportunity to examine plaintiffs' records and expressed uncertainty as to whether they owed the amount requested as set forth in the closing statement prepared by plaintiffs. As plaintiffs refused to meet further with defendants or to give defendants further access to their records their actions can only be interpreted to constitute a demand that defendants pay to them the amount set forth in that closing statement. Even assuming that: (1) the trial court could have found that defendants' requests were unreasonable and dilatory, and (2) plaintiffs had given defendants reasonable access to plaintiffs' records, there was no "definite and unequivocal manifestation" in defendants' words or conduct that they would not "render the promised performance" by paying such money as was actually due plaintiffs by the terms of the loose arrangement between the parties. Neither "doubtful and indefinite statements that the performance may or may not take place" nor similar conduct are, "of themselves, enough to constitute repudiation." *Stonecipher*, 30 Ill. App. 3d 140, 143, 332 N.E.2d 151, 153-54.

For the reasons previously stated, the case before us differs not only from *Stonecipher* but also from *Builders Concrete Co. v. Fred Faubel & Sons, Inc.* (1978), 58 Ill. App. 3d 100, 373 N.E.2d 863, and *Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.* (1977), 49 Ill. App. 3d 258, 364 N.E.2d 939. In *Builders Concrete Co.* renunciation was made by an overt statement. In *Keep Productions, Inc.*, the court held that a licensee of a theater had repudiated its contract with its licensor by contracting for productions extending into the future thus preventing the licensee from putting on the type of productions required to be presented during that time by the terms of the license.

Although at the time that closing was requested, defendants were unable to show any particular item in plaintiffs' closing sheet that was incorrect, the trial court later determined that plaintiffs were not entitled to the hourly wage rate requested by the proposed closing statement and were not entitled to recovery for incidental time handling extras which was also included in the request for payment as per the closing statement. Although the determination of a wage rate resulted from a stipulation of the parties which may have resulted from a laudable spirit on the part of plaintiffs to resolve matters in issue, the fact that the wage request was

reduced illustrates the uncertainty as to the exact amount of the unliquidated claim. With the hindsight that is available only to a court of review, it is apparent that a builder of houses who is in dispute with a purchaser as to the unliquidated amount due on a contract between the parties acts at some peril in declaring a contract terminated when the purchaser refuses to make payment in the amount requested. As was the case here, it will often turn out that the contractor is not entitled to the full amount requested.

■■ The statements and conduct of the defendants here were insufficient, as a matter of law, to constitute an anticipatory breach of the contract. Even if it be determined that plaintiffs had tendered full performance required under the contract and it became a unilateral contract with only performance of payment by defendants left to be made, defendants were not in breach of the contract by refusing to honor a demand which turned out to be excessive.

We are accordingly compelled to the conclusion that plaintiffs breached the contract by the sale of the premises and were not entitled to consequential damages and must return to defendants their down payment. Because of this determination we need not decide whether plaintiffs had substantially performed under the contract, a most vexing issue, nor other claims raised by the parties.

The judgment for plaintiffs as to the complaint and the counterclaim are reversed and the case is remanded to the circuit court of Macon County with directions to issue judgment in favor of defendants on the counterclaim in the sum of $6500.

Reversed and remanded with directions.

MILLS and CRAVEN, JJ., concur.