*In re* MARRIAGE OF ELIZABETH HOPKINS, Petitioner-Appellant, and HAROLD HOPKINS, Respondent-Appellee.

Fourth District   No. 17511

Opinion filed May 12, 1982.

William M. Goldstein, of Gaston & Goldstein, of Urbana, for appellant.

Burt Greaves, of Greaves & Lerner, of Champaign, for appellee.

JUSTICE MILLS delivered the opinion of the court:

We deal here with a unique and innovative allocation of a corporate *debt* incurred during marriage.

Petitioner and respondent were married on August 11, 1962, and two children were born on May 9, 1965. In the late 1960's and the 1970's, petitioner assisted respondent in the operation of a gift shop and clothing store which were jointly owned by them. Both of these businesses were eventually sold, however. Petitioner has a certificate in interior decorating but has never been employed in that field. She does, however, have skills in retail merchandising, buying, and personnel management which she gained by working in the gift shop and clothing store which the parties owned.

After the businesses were sold, petitioner was employed as corporate secretary of respondent's automobile businesses at an annual salary of approximately $19,000, but the salary was largely a vehicle for making payments on certain insurance policies. Petitioner had only nominal job duties as corporate secretary. At the time of the hearings in this case, petitioner was spending most of her time at home so that the children could be properly supervised, in deference to respondent's wishes.

Respondent is presently the owner of two automobile dealerships. The first was acquired in 1973; the second in 1978. The first automobile business was acquired from respondent's former father-in-law. Due to the generally depressed state of the automobile industry, both of these businesses are technically insolvent, and because of their precarious financial condition are virtually unsaleable. Respondent feels that these businesses will eventually be profitable, however.

The evidence reveals that at the time of the dissolution of their marriage, the net assets of the parties were valued at $256,595, based on the assumption that the value of the automobile dealerships is zero, as opposed to a negative net value. As a result of the allocation of the marital debts and assets, petitioner received property with a net value of $202,090, while the net amount of respondent's property award was $54,505. The automobile dealerships were awarded to respondent, and he was ordered to assume the bulk of the marital debts. Petitioner was ordered to hold the respondent harmless for a $30,000 loan which Tillie and Mae King (apparently relatives of petitioner) made to respondent. Throughout the trial of this case, this loan was repeatedly characterized by respondent as a business loan, but he later indicated that it was a "personal and family debt." Following the initiation of petitioner's divorce action, the Kings demanded payment of this note and eventually obtained a judgment against respondent thereon.

I. Plaintiff first contends that in ordering her to hold respondent harmless from liability for the amount of the $30,000 judgment which Tillie and Mae King recovered against respondent, the trial court erroneously construed the loan as a business, as opposed to a personal, debt. The short answer to this contention is that the nature of this debt is irrelevant in assessing the propriety of the property allocation made by the trial court.

The parties stipulated all of their property, including the automobile dealerships, was marital property. Under section 503(c) of the Illinois Marriage Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)) a trial court has a great amount of discretion in allocating marital property among the parties through a divorce proceeding. The power to make discretionary allocations of marital property obviously includes the power to allocate debts attached to that property. Although ordering a

party who does not receive business property to assume responsibility for a business debt may indeed be unusual, respondent cites no cases which proscribe such an action, and we see no reason why a court should not be permitted to do so in an appropriate case.

Petitioner's apprehensions as to the harm which might accrue to the interests of the judgment creditors as a result of petitioner being ordered to hold respondent harmless for the amount of the King loan are clearly unfounded. The loan was not formally assigned to petitioner; she was only ordered to hold respondent harmless for the amount thereof. The trial court's order in no way impaired or affected the rights of the Kings *vis-a-vis* respondent. The Kings can still proceed against respondent for the amount of the judgment; the only difference is that now petitioner can be held in contempt of court if she does not pay the amount of the judgment to the Kings or does not reimburse respondent for any amount which he pays to the Kings on the judgment. Contrary to petitioner's assertion, the court's order in this regard will thus not create a third-party indemnification action by respondent against petitioner.

Neither of the two cases which petitioner cites in her discussion of the court's treatment of the King debt are apposite or relevant (*In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 409 N.E.2d 321; *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382).

An examination of the trial court's property allocation reveals that petitioner received well over three times the net amount of property allocated to respondent. An allocation of the $30,000 King debt to respondent would, in fact, raise a serious question as to the adequacy of *respondent's* property award. Therefore, quite aside from the nature of the $30,000 King debt, we feel that the trial court clearly did not abuse its discretion in allocating this debt to petitioner.

II. Petitioner next contends that the trial court abused its discretion in refusing to reopen the case to hear additional evidence as to the status or nature of the King loan. In view of our conclusion as to the materiality and relevance of the status of this loan, it is apparent that a reopening of the case to hear additional evidence on this matter would have served no useful purpose. A motion pursuant to section 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 68.3) is addressed to the trial court's sound discretion (*Abbey Plumbing & Heating, Inc. v. Brown* (1977), 47 Ill. App. 3d 719, 365 N.E.2d 115), and the trial court clearly did not abuse its discretion in denying petitioner's motion as to this issue.

III. Petitioner finally complains that the trial court abused its discretion in refusing to order respondent to pay her attorney fees, which apparently totaled $6,675. A party seeking an award of attorney fees in a dissolution of marriage case must show financial inability to pay the fees and financial ability on the part of the other spouse to do so. (*Gasperini v.*

*Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.) Here, the petitioner clearly did not demonstrate an inability to pay her attorney fees, which amount to less than 4% of her total property award. Thus, the trial court did not abuse its discretion in ordering the petitioner to pay her own attorney fees.

We conclude with an observation that the instant case presented the trial court with a difficult situation. Both parties had obviously been living beyond their means, and the respondent's businesses were experiencing severe financial difficulties. Nevertheless, Judge Jensen did a commendable job of fashioning a property allocation which will afford petitioner and the parties' children an adequate standard of living, and at the same time give respondent at least a fighting chance of making a success of his businesses. The memorandum opinion and orders which the trial court entered are, in fact, models of clarity which reflect the high degree of consideration and attention which the court devoted to the resolution of this complex dissolution of marriage case. We are loath to disturb the trial court's able resolution of this matter.

Affirmed.

WEBBER and TRAPP, JJ., concur.