OHANNES KOROGLUYAN, Plaintiff-Appellee, v. CHICAGO TITLE AND TRUST COMPANY, as Trustee, *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—89—3149

Opinion filed May 10, 1991.

RAKOWSKI, P.J., dissenting.

Howard C. Goode, of Northbrook, for appellants.

Greenberg, Keele, Lunn & Aronberg, of Chicago (Nathan H. Lichtenstein and Kevin S. Besetzny, of counsel), for appellee.

JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Ohannes Korogluyan, filed an action to confirm a sale of property held as security for a loan in default. The judge granted summary judgment to the plaintiff. The defendants, John, Dimitra, Peter and Patricia Saltouros, contend that factual questions existed that could not be properly decided in a summary judgment.

The defendants were the owners of the beneficial interest in a land trust. The corpus of the trust was a single-family residence located at 7216 East Prairie, Lincolnwood, Illinois.

On January 24, 1983, Peter Saltouros executed a note in favor of Washington National Bank (the Bank) in the amount of $40,000. As security for the note, all four of the defendants executed and delivered to the Bank an assignment of the beneficial interest under the trust.

The note was renewed periodically, and as of March 6, 1984, Peter Saltouros was indebted to the Bank in the sum of $37,000. The entire principal and accrued interest on the note became due and payable on September 4, 1984. Peter Saltouros failed to pay any part of this indebtedness.

The Bank was subsequently liquidated, and the Federal Deposit Insurance Corporation (FDIC) acquired the note, which was then in default. On July 14, 1988, the FDIC assigned the note to the plaintiff.

On July 26, 1988, the plaintiff notified Peter Saltouros that he was in default on the note and demanded full and immediate payment of

the outstanding balance of principal and interest, which the plaintiff calculated at $67,631.44, plus $26.30 *per diem* interest thereafter.

The plaintiff subsequently gave notice, in accordance with section 9—504 of the Illinois Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 9—504), that the beneficial interest would be sold on August 30, 1988. The notice was sent by registered mail to the defendants at their last known address, and by regular mail to the trustee. Notice of the sale was also published on three different dates in the Chicago Daily Law Bulletin.

The sale was held on August 30, 1988, at the offices of the plaintiff's attorney. The plaintiff was the sole bidder at the sale, and he purchased the property for $69,993.18. The plaintiff sent a letter to Peter Saltouros, demanding payment of the entire purchase price plus $2,000 for an alleged deficiency. The entire claimed amount was broken down as follows:

| | |
|---|---|
| Reasonable expenses of preparing for sale | $ 941.24 |
| Reasonable attorney fees | $ 2,500.00 |
| Satisfaction of indebtedness secured by the security interest | $ 68,551.94 |

The plaintiff's attorney prepared a report of the sale and gave it to the trustee. The trustee informed the plaintiff that, in order for the trustee to recognize a successful bidder at a sale held pursuant to section 9—504, the trustee required a judicial confirmation of the sale. The plaintiff filed this action in the circuit court of Cook County on October 13, 1988, seeking confirmation of the sale.

All the defendants appeared; an answer and two affirmative defenses were filed on behalf of all defendants except Peter Saltouros. On February 9, 1989, the attorney for the defendants was granted leave to withdraw. On April 6, 1989, the plaintiff filed a motion for summary judgment supported by two affidavits, asserting that the answer and affirmative defenses filed on behalf of the defendants failed to raise a genuine issue of material fact. The plaintiff also filed a motion for default judgment against Peter Saltouros for his failure to file an answer or other responsive pleading. A default judgment was entered on April 14, 1989, against Peter Saltouros. Shortly later, Howard C. Goode was granted leave to file his appearance on behalf of the defendants, and the default judgment against Peter Saltouros was vacated. On June 16, 1989, Peter Saltouros filed his answer to the complaint, admitting that the defendants executed an assignment of the beneficial interest under the trust to secure payment of the loans made to him by the Bank, and denying all other allegations of the complaint.

The defendants filed their response to the plaintiff's motion for summary judgment, alleging that the plaintiff's demand letter sought an amount in excess of the amount due under the note, and that, therefore, the collateral sale was unfair and not in compliance with the Uniform Commercial Code.

The plaintiff's motion for summary judgment was granted, and the sale was confirmed. On October 25, 1989, the defendants filed a motion to reconsider, claiming that the plaintiff's demand for payment in excess of the amount due prevented the defendants from exercising their right of redemption. The motion to reconsider was denied.

The plaintiff has not seen fit to answer the defendants' argument that a question of fact existed over whether the amount demanded was in excess of the amount of the indebtedness and, therefore, that summary judgment should not have been granted. Instead, he contends that the defendants have not properly appealed from the order granting summary judgment, that the absence of a report of proceedings requires affirmance of the judge's order and that the defendants' response to the motion for summary judgment did not contain counteraffidavits that rebutted the allegations of the affidavits he filed.

The defendants have filed a reply brief in which they point out that the plaintiff has not responded to their arguments on the merits of the case. The defendants, however, have not responded to the arguments made by the plaintiff.

The procedural posture of the case is this: Although the plaintiff has not answered the defendants' argument on the merits, his position should be no less favorable than if he had not filed a brief at all. Under *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493, we would be entitled to pass on the defendants' claim even if the plaintiff had not answered. Therefore, we will decide the defendants' arguments on the merits. (See *Cohn v. Receivables Finance Co.* (1972), 7 Ill. App. 3d 869, 288 N.E.2d 894; *People ex rel. City of Chicago v. Commercial Union Fire Insurance Co.* (1926), 322 Ill. 326, 153 N.E. 488.) On the other hand, the defendants have not responded in their reply brief to the points raised by the plaintiff. But, what is fair for one should be fair for both. Therefore, we will address the arguments raised by the plaintiff, even though the defendants have not answered them, and we will address them first.

The defendants filed a notice of appeal from the order denying their motion to reconsider; they did not specify in the notice that they were appealing from the order granting summary judgment. The plaintiff's argument is twofold: he maintains that we are restricted to reviewing the propriety of the judge's ruling on the motion to reconsider

and that the ruling on the motion to reconsider is judged on review under an abuse-of-discretion standard. He argues further that no abuse of discretion has been shown. We do not agree with either of the plaintiff's arguments.

■ The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence which was not available at the time of the hearing, changes in the law or errors in the court's previous application of existing law. (*Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 518 N.E.2d 424.) As a general rule a motion to reconsider is addressed to the trial court's sound discretion. (*In re Marriage of Hopkins* (1982), 106 Ill. App. 3d 135, 435 N.E.2d 897.) But a motion to reconsider an order granting summary judgment raises the question of whether the judge erred in his previous application of existing law. Whether a court has erred in the application of existing law is not reviewed under an abuse-of-discretion standard.

■ The purpose of a notice of appeal is to inform the party in whose favor a judgment has been rendered that the unsuccessful party desires review. The notice is jurisdictional, but where a defect in the notice is one of form rather than substance, the appellate court is not necessarily deprived of jurisdiction. *Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.* (1985), 137 Ill. App. 3d 550, 484 N.E.2d 1178.

■ In *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 435 N.E.2d 877, the plaintiff's notice of appeal stated that he was appealing from the order denying his motion to reconsider the dismissal of his third amended complaint. The appellate court stated that the notice of appeal clearly implied a request for reversal of the underlying order dismissing the complaint and held that the plaintiff's failure to specify the underlying order was merely an error of form. (*Pickle*, 106 Ill. App. 3d at 737.) Similarly, in this case, the plaintiff had adequate notice that the defendants were appealing the order granting summary judgment, especially since the motion for reconsideration was virtually identical to the response to the plaintiff's motion for summary judgment.

■ The defendants did not include in the record on appeal a transcript of the proceedings at which the judge heard arguments and granted summary judgment. The plaintiff contends that this court, therefore, does not have a sufficient basis upon which to review the judge's decision. We disagree. Where the trial judge's decision is based solely upon the pleadings and affidavits, and no evidence has been heard, the appellate court may review the issues of law without a report of proceedings. (*Flannery v. Marathon Oil Co.* (1979), 75 Ill. App. 3d 690, 394 N.E.2d 706.) The issue before this court is one of law. (See

*McNames v. Rockford Park District* (1989), 185 Ill. App. 3d 291, 540 N.E.2d 1119.) Because the issue on appeal is solely a question of law and does not involve evidentiary issues, the absence of a transcript of the proceedings in the trial court does not bar review by this court. *McNames*, 185 Ill. App. 3d at 293. See also *Woodfield Ford, Inc. v. Akins Ford Corp.* (1979), 77 Ill. App. 3d 343, 395 N.E.2d 1131; *Kuhlman v. Cotter* (1968), 92 Ill. App. 2d 475, 234 N.E.2d 815.

■ The plaintiff's last contention is that an unauthenticated copy of a letter from the FDIC, which was attached to the defendants' response to the motion for summary judgment, was legally insufficient and may not be considered. The plaintiff did not raise that argument in the trial court. Again we must disagree with the plaintiff's position. The sufficiency of an affidavit in support of or in opposition to a motion for summary judgment cannot be challenged for the first time on appeal. (*Peltz v. Chicago Transit Authority* (1975), 31 Ill. App. 3d 948, 335 N.E.2d 74.) Although the FDIC letter is not an affidavit, it was submitted to the court in support of the defendants' response to the plaintiff's summary judgment motion; therefore, the letter is properly before this court. See *In re Application of County Collector of Cook County, for Judgment and Order of Sale Against Certain Real Estate* (1974), 23 Ill. App. 3d 923, 320 N.E.2d 456. See also *Miller v. St. Charles Condominium Association* (1986), 141 Ill. App. 3d 834, 491 N.E.2d 125; *Healy v. Owens-Corning Fiberglas* (1989), 187 Ill. App. 3d 182, 543 N.E.2d 110.

We turn now to the defendants' argument that a factual question remained unresolved that could not be decided on summary judgment. We repeat that the plaintiff did not respond to this argument.

■ The proceedings are governed by the Uniform Commercial Code (the Code) (Ill. Rev. Stat. 1987, ch. 26, par. 1—101 *et seq.*). After default on any obligation, a secured party may dispose of collateral to satisfy the indebtedness, but "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." (Ill. Rev. Stat. 1987, ch. 26, par. 9—504(3).) Before the secured party has disposed of the collateral, the debtor may "redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party *** and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses." Ill. Rev. Stat. 1987, ch. 26, par. 9—506.

In support of his motion for summary judgment, the plaintiff introduced the affidavit of his attorney which alleged that the plaintiff had made the only bid on the property at a public auction (which was at-

tended by two other apparently prospective bidders); that the bid was $69,913.18; and that the attorney delivered the certificate of sale to the plaintiff. Disbursements listed in the affidavit included $941.24 for "reasonable" expenses; $2,500 for "reasonable" attorney fees and legal expenses and $68,551.94 for satisfaction of the indebtedness, leaving a deficiency of $2,000.

In their answers, the defendants denied that $68,551.94 represented the amount of the indebtedness. Attached to the response to the motion for summary judgment was a letter from the FDIC to its attorney dated February 3, 1988, which showed the principal balance due the FDIC to be $37,000, accrued interest of $19,100.59 for a total of $56,100.59 and *per diem* interest of $12.9247. The response also included the letter from the attorney for the plaintiff dated July 26, 1988, which demanded payment of $67,631.44 with *per diem* interest of $26.30. In the motion to reconsider, the defendants also argued that the claimed costs and attorney fees were excessive and that those amounts should be evaluated.

It is necessary to pinpoint the precise issue raised by the defendants' arguments. The position taken by the defendants in the trial court and in this court may be summarized: The judgment creditor made an excessive demand for payment before the sale. Therefore, the subsequent public sale was not commercially reasonable, the notice of sale was not reasonable and the sale was not made in good faith. The defendants do not maintain that the plaintiff failed to follow the requirements of the Code as to notice. The defendants did not claim in the trial court, nor do they in this court, that the purchase price was too low or was the result of fraud or collusion. The defendants have not cited, nor has our research discovered, any case which holds that an excessive demand for payment by a secured creditor before the sale vitiates the subsequent sale or renders the sale or notice commercially unreasonable. The case cited by the defendants, *Henderson v. Lemna* (1979), 76 Ill. App. 3d 168, 394 N.E.2d 1070, involved a breach of contract action.

■ To sum up, the Code provides for notice of sale of collateral. The purpose of that notice is to enable the debtor to protect his interest in the secured property by paying the debt, finding a buyer or being present at the sale to bid on the property. (*Lake Shore National Bank v. McCann* (1979), 78 Ill. App. 3d 580, 396 N.E.2d 1301.) The Code also provides that, if the secured party is not complying with the statute, the debtor may seek judicial relief before the sale takes place. Ill. Rev. Stat. 1987, ch. 26, par. 9—507(1).

▋ The defendants received the plaintiff's demand on or about July 26, 1988. They expressed no objection to the amount of indebtedness claimed. They received the notice of sale on or about August 4. They did not appear at the sale or seek any judicial relief. In our judgment they should not now be permitted to complain of the legality of the sale itself. The fact that the secured party was the purchaser does not require any different conclusion in this case. The Code expressly provides that the secured party may buy the collateral at a public sale. (Ill. Rev. Stat. 1987, ch. 26, par. 9—504(3).) The Code does distinguish between a third-party purchaser and a secured party purchaser to the extent that the third-party purchaser takes the property free of any of the debtor's rights, even though the secured party did not comply with the requirements of the Code, if the third-party purchaser did not buy in collusion with the secured party or, in any case, if the third-party purchaser acted in good faith. (Ill. Rev. Stat. 1987, ch. 26, par. 9—504(4).) In this case the secured party notified the defendants of the amount of the indebtedness. Having received no response either to the demand or to the notice of sale, he had no reason to believe at the time he bid that the defendants would contest the amount of the indebtedness. Significantly, he bid an amount greater than the claimed indebtedness.

Acceptance of the defendants' argument that proof that a secured party demanded an amount in excess of the actual debt invalidates a sale would gut the orderly procedures contemplated by the Code. Any secured party would be foolhardy to bid at a public sale unless he first was assured that there was no dispute over the amount due. If the debtor expressed disagreement over the amount, the only safe recourse for the secured party would be an adjudication of the due amount before the sale. As we have pointed out, a third-party purchaser takes free of any interest of the debtor if the purchaser is unaware of any deviation from the requirements of the Code. To put the third-party purchaser on notice, however, the debtor would need only appear at the public sale and announce to all present that the secured party had demanded an amount in excess of the actual debt. The looming specter of a lawsuit which could render any sale a useless act would have a pronounced chilling effect on any prospective bidder. Rejection of the defendants' argument is even more compelled under the facts of this case—the defendants did nothing until after the action to confirm the sale was filed.

▋ The defendants also maintain that they did not have a reasonable opportunity to redeem the collateral as provided under the Code. We disagree. The debtor's right to redeem collateral is restricted to

"any time *before* the secured party has disposed of collateral or entered into a contract for its disposition under Section 9—504 or before the obligation has been discharged under Section 9—505(2)." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 26, par. 9—506.) The first suggestion that the defendants wished to redeem the collateral came in their motion to reconsider the order granting summary judgment. Any claim of the right to redeem, therefore, came too late. (See *Old Colony Trust Co. v. Penrose Industries Corp.* (3d Cir. 1968), 398 F.2d 310.) The case cited by the defendants, *Interstate Electric Supply Co. v. Contractors & Engineers, Inc.* (1987), 161 Ill. App. 3d 676, 515 N.E.2d 182, does not assist their position. That case involved an action to enjoin the sale of collateral.

The defendant's last claim is that the sale should be set aside because the plaintiff allegedly violated the provision of the Code that "[e]very contract or duty within this Act imposes an obligation of good faith in its performance or enforcement." Ill. Rev. Stat. 1987, ch. 26, par. 1—203.

Allegations of failure to act in good faith in the performance of duties arising under section 1—203 of the Code do not state a claim for relief. (*Washburn v. Union National Bank & Trust Co.* (1986), 151 Ill. App. 3d 21, 502 N.E.2d 739.) In *Washburn* the court spoke as follows:

> "[S]ection 1—203 is directive, rather than remedial, and is implemented by such provisions as the 'commercially reasonable' requirement of section 9—507(2). Having found that the sale of collateral here was commercially reasonable within the meaning of the Code, we cannot say that, nonetheless, the sale violated the [secured party's] duty of good faith. [Citation.] There is no lack of good faith in acting as authorized by the Code. [Citation.]" (151 Ill. App. 3d at 27.)

Similarly, because we find that the defendants have failed to establish that the sale was not "commercially reasonable," we necessarily conclude that there is a failure to show that the plaintiff did not act in good faith.

We believe the defendants have misdirected their arguments. Their arguments would be proper as a defense to any action brought by the plaintiff to recover any alleged deficiency and in any action brought by the defendants against the plaintiff to recover any surplus or to recover in damages. (Ill. Rev. Stat. 1987, ch. 26, pars. 9—504(2), 9—507(1).) Consequently, they are not without a remedy. Assuming no time limitation bar, they may maintain an action for any surplus or any other damages, and at that time they may raise the argument that

their indebtedness was several thousand dollars less than the amount claimed, and they would be entitled to a hearing on the reasonableness of the attorney fees and costs. (See *Interstate Electric Supply Co. v. Contractors & Engineers, Inc.* (1987), 161 Ill. App. 3d 676, 515 N.E.2d 182.) Indeed, there is no reason why the defendants could not have filed a counterclaim in these proceedings seeking reimbursement for any surplus paid by the plaintiff over the amount of the actual indebtedness and an adjudication on the reasonableness of the attorney fees and costs.

The plaintiff's complaint did not contain a prayer for a deficiency judgment. However, the notice of sale recited that the plaintiff reserved the right to and intended to seek any deficiency judgment from the debtor after the sale. The judgment order recited, in part, that "the report of sale and distribution is confirmed.'' We disagree with any holding that the order constituted a judgment that the amount of indebtedness claimed by the plaintiff was correct or that the attorney fees and costs were reasonable. To be valid, a judgment must show distinctly, and not inferentially, that the matters in the record have been finally disposed of in favor of one of the litigants, or that the rights of the parties have been finally adjudicated. (*Kaybill Corp. v. Cherne* (1974), 24 Ill. App. 3d 309, 320 N.E.2d 598.) In order to render a judgment a bar to further proceedings on the same cause of action, it is essential that it should be so specific and definite and free from ambiguity as to show clearly what was the claim or cause of action adjudicated. (23A Ill. L. & Prac. *Judgments* §293 (1979).) We repeat that the pleadings did not ask for the findings that would be required to support a deficiency judgment. We add that any conclusion that the order recited such findings would be unreasonably strained. In short, we hold that the order was not *res judicata* on the amount of the indebtedness or the reasonableness of attorney fees and costs.

For these reasons, we judge that no triable issue of fact was before the judge for his determination of whether the sale should be confirmed. The judgment of the circuit court is affirmed.

Judgment affirmed.

LaPORTA, J., concurs.

PRESIDING JUSTICE RAKOWSKI, dissenting:
Defendants' position on appeal is that the secured party's balance due exceeded the actual amount due pursuant to the FDIC letter. The difference amounted to $9,139.77. Plaintiff's brief does not dispute this

fact. Rather, it argues that the FDIC letter was "unauthenticated" and therefore it was proper for the trial court to enter judgment in accordance with plaintiff's affidavit. Given the majority position that the FDIC letter was properly before the trial court, it becomes clear that a material issue of fact was present to preclude the entry of summary judgment.

The majority affirms entry of summary judgment which confirmed the report of sale and distribution because defendants failed to object to the improper demand prior to sale and instead waited until the confirmation hearing to raise the issue. The majority opinion finds support for this position in section 9—507(1) (Ill. Rev. Stat. 1987, ch. 26, par. 9—507(1)). The statute, however, does not mandate action be taken prior to the sale. Rather, it states "[i]f it is established that the secured party is not proceeding in accordance with the provision of this Part disposition *may* be ordered or restrained on appropriate terms and conditions." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 26, par. 9—507(1).

The majority further suggests that the defendants have misdirected their arguments and have a remedy by way of an action to recover any surplus. Again I must disagree. The order granting summary judgment confirmed the report of sale and distribution which reflects sale proceeds of $69,993.18, total disbursements of $71,993.18 and a resulting deficiency in the amount of $2,000. Insomuch as the secured party's amount due was disputed, litigated and decided by the trial judge, any attempt to relitigate the same issues would be barred by the doctrine of *res judicata*. I respectfully submit that the majority attempts to confirm the sale as being "commercially reasonable" but does not confirm that part of the report of sale and distribution reflecting receipts, disbursements and a $2,000 deficiency. As a result of the foregoing reasons, I would reverse the trial court's entry of summary judgment and remand the cause to the circuit court for further proceedings.