2022 IL App (1st) 210415-U
No. 1-21-0415

FIRST DIVISION
November 21, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PNC BANK, N.A., | ) | Appeal from the Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | No. 2019 CH 7510 |
| v. | ) | |
| | ) | The Honorable |
| DONGXI JIN, GEA WHA KIM, et al., | ) | Edward J. King, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Hyman concur in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's orders denying Defendant-Appellant's motion to quash service of process and approving the sale of the foreclosed-upon property. We find the circuit court did not err in allowing Plaintiff-Appellee to serve Defendant-Appellant by publication following several unsuccessful attempts to serve him personally at both of the current residential addresses found through due and diligent inquiry.

¶ 2    Defendant-Appellant Dongxi Jin ("Jin") appeals from the circuit court's order denying his motion to quash service of process ("Motion to Quash") that he filed in a foreclosure action that concluded with the court approving the judicial sale of the property. He also seeks to have the

order approving the sale vacated, based on his argument that Plaintiff-Appellee PNC Bank, N.A.'s ("PNC") service of process by publication was invalid.

¶ 3   Following the circuit court's entry of an order of default and foreclosure judgment against Jin, Jin filed a Motion to Quash, arguing that PNC should have attempted to serve him at his claimed place of employment after unsuccessfully attempting to serve him at his residence, rather than proceeding to service by publication. Jin now appeals from the November 5, 2020 order denying his Motion to Quash, as well as the March 15, 2021 order approving the judicial sale.

¶ 4                                          BACKGROUND

¶ 5   The underlying matter arises from a residential mortgage foreclosure suit filed by PNC against Jin, his then-wife Gea Wha Kim, and their homeowners' association on June 21, 2019.[1] Jin signed a promissory note and mortgage that was assigned to PNC; pursuant to the terms of the note, any notice that must be given to Jin would be mailed or delivered to the property address listed on the note, or to another address provided to the note holder. The address listed on the note, and the foreclosed-upon property at issue, was 4314 Exeter Lane, in Northbrook, Illinois (the "Exeter Property.") To serve the defendants, PNC used the process server that the trial court had previously appointed as the standing special process server for all cases filed by PNC's counsel. The defendant homeowners' association was successfully served on June 27, 2019. Summons were also issued to Jin and Kim, each listing the Exeter Property and an alternative address for each defendant. The summons to Jin listed as an alternative his last known address, an apartment unit on 1103 South Hunt Club Drive in Mount Pleasant, Illinois (the "Hunt Property.")

¶ 6   Neither Jin nor Kim was personally served. The special process server tasked with serving Jin made five attempts to locate him between June 27, 2019 and July 11, 2019, once at the Exeter

---

[1] Jin is the only defendant appealing from the trial court's decision.

property and four times at the Hunt property. In his affidavit regarding attempted service at the Exeter property, special process server Paul Winston of ATG LegalServe, Inc. stated that the house appeared vacant, with garbage on the floor and no visible furniture. There was a sticker on the front door indicating that the property was managed by safeguard property. In Winston's affidavit regarding the Hunt property, he stated that he made four separate visits on various days of the week and times of day, that the property was a multi-unit building, that Jin's name did not appear on the lobby directory and the buzzers and unit numbers were only listed in code, and that he received no response after attempting to ring a few different buzzers and could not get past the locked lobby doors. Winston further stated that the entrance to the back of the building was not accessible. On one occasion, Winston was able to access the building and locate Jin's supposed unit, but received no response after knocking on the door. Winston did not state that service by mail had been attempted at either known address.

¶ 7    PNC filed an Affidavit for Service by Publication on July 29, 2019, attaching a Due Diligent Inquiry Affidavit signed by John Kienzle of ATG LegalServe, Inc. that listed seven search engines and databases the process servers used in attempting to locate Jin: (1) a search of recent addresses; (2) a motor vehicle search; (3) a forwarding address inquiry with the United States Postal Service; (4) the AT&T 411 Directory Assistance; (5) an Illinois Department of Financial and Professional Regulation license search; (6) county, state, and federal inmate searches; and (6) a National Provider Identifier number search on hipaaspace.com. According to the affidavit, the searches revealed that Jin's last-known address was the Hunt Property, and prior to that, the Exeter Property. The searches located one additional address, an apartment on Milwaukee Avenue in Glenview, Illinois ("Milwaukee Property"), where Jin allegedly resided until 2017. The process server also found an acupuncturist license healthcare provider number for Jin, the latter of which

was connected to the Milwaukee Property address. The Clerk of the Court issued a Notice by Publication to Jin and Kim on July 29, 2019. The notice was mailed to Jin and Kim at both the Exeter and Hunt Properties. The notice of the foreclosure case was also published in the Chicago Daily Law Bulletin on August 2, 9, and 16, 2019.

¶ 8    Neither Jin nor Kim nor the defendant homeowners' association ever filed an appearance in the foreclosure case, and PNC filed a Motion for Default Order against all three defendants on October 8, 2019. The circuit court entered a Judgment of Foreclosure and Sale ("Foreclosure Judgment") on November 12, 2019, which states that Jin and Kim were served by publication beginning on August 2, 2019 and never filed an answer, and the homeowners' association was served on June 27, 2019 and never filed an answer. The court also entered an Order of Default against all three defendants on that date. A Notice of Entry of Default and Judgment of Foreclosure was filed on November 14, 2019 and sent to each defendant to their most recent known addresses; for Jin, these were the Exeter and Hunt Properties. The notice was also published in the Chicago Daily Law Bulletin on January 21, January 28, and February 4, 2020. On February 7, 2020, PNC filed a Notice of Sale, stating that a foreclosure sale of the Exeter Property would take place on March 3, 2020. This notice was also mailed to Jin at the Exeter and Hunt Properties. The sale date was continued several times, and each new Notice of Sale was mailed to Jin at the same two addresses and published in the Chicago Daily Law Bulletin.

¶ 9    On August 10, 2020, Jin filed a Motion to Quash Service of Process pursuant to 735 ILSC 5/2-301. Jin argued that the process server's single attempt to serve him with a summons and complaint at the Exeter Property and four attempts to serve him at the Hunt Property, as well as the service by publication, were insufficient to grant the circuit court with jurisdiction over him, and that PNC failed to exercise the statutorily required due inquiry into his whereabouts and

diligent inquiry into his place of residence required for service by publication pursuant to 735 ILCS 5/2-206(a). In his Motion to Quash, Jin took issue with the process server's failure to attempt service at the third address found in the process server's search, as identified in the Due Diligent Inquiry Affidavit. Jin claimed that the Milwaukee Property was his business address, and that the process server should have attempted to visit that address and call the phone number associated with Jin's business. In an affidavit attached to the Motion to Quash, Jin stated that he was never served with a summons and complaint in the foreclosure case, that he was a licensed acupuncturist practicing at Beijing Acupuncture Pain & Rehab, Inc., located at the Milwaukee Property address, from February 2010 to July 30, 2019, and that he could have been found at that address in June and July of 2019 during the work hours provided, both in person and at the business's phone number.

¶ 10     PNC responded that special process server Winston listed in his affidavit the signs he observed indicating that no one was living at the Exeter Property, and stated that he was not able to locate Jin at the Hunt Property after four separate attempts to do so. In support of its argument that the special process server made a diligent and due inquiry into Jin's whereabouts prior to PNC moving for service by publication, despite Jin's claim that he could have been found at his business address at the Milwaukee Property, PNC stated that Jin failed in his motion and affidavit to provide any evidence of where he resided during the time that the special process server was attempting personal service. PNC further stated that there was no authority for Jin's position that the process server was required to attempt service on an individual defendant at his business address, and that while the process server's search did identify the acupuncturist license, as well as a phone number and the Milwaukee Property address in connection to Jin's occupation, the years during which he appeared to be associated with the address and phone number were from 2011 to 2017, not 2019.

The search also did not turn up the name of Jin's workplace, and a search for Beijing Acupuncture Pain & Rehab, Inc. on the Illinois Secretary of State Corporation Search showed that the corporation was dissolved on October 7, 2018 and the address listed for Jin as president was the Exeter Property, with no mention of the Milwaukee Property.

¶ 11    The circuit court dismissed the Motion to Quash on November 5, 2020, without providing its reasoning. Jin filed a motion to clarify and certify that order as final and appealable. A few days later, Jin's counsel filed a motion to withdraw, and stated in that motion that Jin's last known address was in East Lansing, Michigan. The circuit court granted the motion to withdraw as counsel and entered an order withdrawing Jin's motion to certify the November 5, 2020 dismissal of the Motion to Quash as final and appealable. The court also granted PNC's motion to proceed with the foreclosure sale. A public notice of sale of the Exeter Property was issued on January 22, 2021, for a sale scheduled to take place on February 23, 2021. On that date, the property was sold to a third-party buyer. On March 15, 2021, the circuit court held a hearing for confirmation of the sale and entered an order approving the sale. The order permitted the buyer to take possession of the property on April 14, 2021. On April 14, Jin filed a notice of appeal from the order dismissing his Motion to Quash and the order approving the judicial sale.

¶ 12    On appeal, Jin argues that his procedural due process rights were violated by PNC's service by publication when it was aware of his business address and did not attempt service there. He relies on the affidavit filed with his Motion to Quash, where he stated that he owned and operated an acupuncture business at an address that PNC's process server uncovered in its search of Jin, and Jin could have been served there during his work hours or by phone. PNC responds detailing the database searches and service attempts made by its process servers and documented in the affidavits of Wilson and Kienzle, and counters that these efforts were sufficient to warrant service

by publication and did not violate Jin's due process rights, particularly since Jin himself has not provided his address of residence during late June and early July 2019. It notes that the relevant statutory requirements for service of process on an individual speak to service at the individual's usual place of abode, without mention of his place of employment. PNC further argues that the issue on appeal is moot, because the Exeter Property was purchased by and conveyed to a third-party buyer, and there was no longer an actual controversy at issue since a successful appeal would not undo the foreclosure sale.

¶ 13                                   ANALYSIS

¶ 14                                Issues on Appeal

¶ 15    As an initial matter, we note that Jin's Notice of Appeal, which was filed on April 14, 2021, seeks appeal of both the November 5, 2020 order denying his Motion to Quash and the March 15, 2021 order approving the sale of the foreclosed property. He timely appeals the latter order; however, we may review the order denying the Motion to Quash as well. *See Korogluyan v. Chicago Title & Trust Co*., 213 Ill.App.3d 622, 627 (1st Dist. 1991) (The Appellate Court may properly review an underlying order where the appellant appeals from a motion to reconsider that order and the appellee has adequate notice of the implied request for appellate review of that underlying order); *see also JPMorgan Chase Bank, N.A. v. Ivanov¸* 2014 IL App (1st) 133553, ¶¶ 39-40 (A notice of appeal is to be construed liberally, and the reviewing court has jurisdiction to review rulings that were necessary steps to the judgment named in the notice of appeal.)  As Jin's argument for why the sale should not have been approved is based on the alleged improper service of process, we have jurisdiction to review the order denying his Motion to Quash as well. *See Ivanov*, 2014 IL App 1st at ¶ 41 (Where appellant did not include the order denying his motion to quash service of process in his notice of appeal, the court nevertheless had jurisdiction to review

the order, as its denial was a necessary step for the trial court's judgment approving the sale of his property.)

¶ 16    We also reject PNC's argument that Jin does not challenge the foreclosure or sale of the property, but only the denial of his Motion to Quash. The Notice of Appeal clearly indicates that he appeals from both of the abovementioned orders, and he sufficiently makes clear in his appellant brief that he challenges the foreclosure judgment. Furthermore, the foreclosure judgment is necessarily implicated in his argument that he lacked proper notice of the foreclosure action against him due to the alleged invalid service of process.

¶ 17                                      Standard of Review

¶ 18    When reviewing a decision on a motion to quash service of process, we must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *Deutsche Bank National Trust Co. v. Brewer*, 2012 IL App (1st) 111213, ¶ 17; *Household Finance Corp. III v. Volpert*, 227 Ill.App.3d 453, 455–56 (1st Dist. 1992). If proper service was not achieved and the defendant did not voluntarily submit to the court's jurisdiction, the court lacked personal jurisdiction over the defendant and any judgment entered over that party is void. *BankUnited v. Velcich*¸ 2015 IL App (1st) 132070, ¶ 27. We review whether the trial court obtained personal jurisdiction over Jin *de novo*. *Id*. at ¶ 26 (citing *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 17). Where the trial court's denial of a motion to quash service of process is based solely on documentary evidence and we review the judgment *de novo*, we need not rely on the court's reasoning and may affirm the denial on any basis that appears on the record. *TFC National Bank v. Richards*, 2016 IL App (1st) 152083, ¶ 25.

¶ 19                    Whether Service by Publication Was Sufficient Notice

¶ 20    Service of summons on an individual must be made "by leaving a copy of the summons with the defendant personally," or "by leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the contents of the summons, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode." 735 ILCS 5/2-203(a). If service cannot be accomplished in either of those manners, the plaintiff must file "an affidavit showing that the defendant resides or has gone out of this State, or on due inquiry cannot be found, or is concealed within this State, so that process cannot be served upon him or her, and stating the place of residence of the defendant, if known, or that upon diligent inquiry his or her place of residence cannot be ascertained, the clerk shall cause publication to be made ***." 735 ILCS 5/2-206(a). Section 2–206(a) allows a plaintiff to serve process on a defendant by publication "in limited cases where the plaintiff has strictly complied with the requirements for such service." *TFC National Bank*, 2016 IL App (1st) 152083 at ¶ 28. Because service by publication has a more limited effectiveness in reaching the intended recipient of the notice, "a party defending notice by publication must demonstrate strict compliance with every requirement of the statute, including due diligence and due inquiry." *Id.* at ¶ 30.

¶ 21    The Circuit Court of Cook County also has a local rule emphasizing the requirements for an affidavit supporting notice by publication in mortgage foreclosure suits:

> Pursuant to 735 ILCS 5/2-206 (a), due inquiry shall be made to find the defendant(s) prior to service of summons by publication. In mortgage foreclosure cases, all affidavits for service of summons by publication must be accompanied by a sworn affidavit by the individual(s) making such "due inquiry" setting forth with particularity the action taken to demonstrate an honest and well directed effort to ascertain the whereabouts of the

defendant(s) by inquiry as full as circumstances permit prior to placing any service of summons by publication. Cook Co. Cir. Ct. R. 7.3 (Oct. 1, 1996).

Therefore, we must review whether PNC's affidavit sets forth with sufficient particularity the steps the process server took in attempting to find and serve Jin, and whether PNC complied with the requirements of due diligence and due inquiry into ascertaining his whereabouts. *TFC National Bank*, 2016 IL App (1st) 152083 at ¶ 30; *Deutsche Bank*, 2012 IL App (1st) 111213 at ¶ 20. Additionally, Jin may challenge the affidavit with his own affidavit setting forth that upon due inquiry, he could have been found; PNC may challenge this "either by successfully questioning the conclusory nature of the defendant's challenge or by producing evidence demonstrating in fact that the plaintiff made due inquiry to locate the defendant so that process could be served upon him." *TFC National Bank*, 2016 IL App (1st) 152083 at ¶ 31.

¶ 22    The requisites of due process are satisfied "if the manner of effecting service of summons gives reasonable assurance that notice will actually be given and the person against whom the action is brought is given time to appear and defend on the merits." *Dobrowolski v. LaPorte*, 38 Ill.App.3d 492, 494 (1st Dist. 1976). Examples where our courts found that the attempted service did not satisfy the requirements of due and diligent inquiry and due process considerations include: failure to physically visit potential addresses found via computer search and failure to follow up on information that the intended individual was receiving Social Security benefits at some location (*see In re Dar. C.*, 2011 IL 111083, ¶¶ 70-72); failure to conduct a basic search into an individual's business address after multiple failed attempts to serve him at home (*see Sutton v. Ekong*, 2013 IL App (1st) 121975, ¶¶ 21-23); and service by publication on a property owner who had been adjudicated disabled, had been living as homeless for years, and for whom no evidence existed to suggest that he was living in the area of publication or that he would have understood the meaning of the published notice (*see O'Halloran v. Luce*, 2013 IL App (1st) 113735, ¶ 36).

¶ 23    In the *Sutton* case, where the court determined that the plaintiff should have located and attempted service on the defendant's workplace address, there were facts in the record that the plaintiff could have easily discovered this information prior to requesting service by special order of the court, but did not make what the court deemed a "basic search" in the phonebook that would have revealed said address. 2013 IL App (1st) 121975 at ¶ 22. The present matter is distinguishable, as PNC did make efforts to find Jin through his profession, including making a request to AT&T 411 Directory Assistance, searching for a professional license registered with the Illinois Department of Financial and Professional Regulation, and a search on hipaaspace.com. The search revealed that Jin held an Illinois acupuncturist license with no associated address, and that he had possibly worked at the Milwaukee Property until 2017, two years prior to the attempted service. Furthermore, the acupuncture business that Jin stated he owned and operated from that address was dissolved in 2018, according to the Illinois Secretary of State Corporation Search website. PNC certainly conducted at least a basic search into Jin's work address, and did not find any information suggesting that in June and July of 2019, he could have been found at the Milwaukee Property. The statutory prerequisites for service "require an honest and well-directed effort to ascertain the whereabouts of a defendant by inquiry as full as circumstances permit." *Bank of New York v. Unknown Heirs and Legatees*, 369 Ill.App.3d 472, 476 (1st Dist. 2006). Section 2-203(a) speaks of service at the defendant's usual place of abode, which is precisely where PNC sought to serve him. Under the circumstances present here, PNC was not required to attempt service at the Milwaukee Property given the information it was able to find on Jin's last-known addresses.

¶ 24    Jin argues that the basis for reversing the circuit court's approval of the judicial sale is that the circuit court violated his Fourteenth Amendment constitutional procedural due process rights

by denying his Motion to Quash, and he subsequently lacked proper notice of the foreclosure case against him. He contends that PNC failed to conduct a due and diligent inquiry into his whereabouts before seeking service by publication because it failed to attempt service at Jin's alleged place of business despite having found the address through the process server's search; he claims that during June and July of 2019, he owned and worked at an acupuncture business at the Milwaukee Property address. PNC responds that its process server conducted a thorough search and found no additional residential or business addresses for Jin that were current to 2019, and it attempted service at both residential locations it discovered, including multiple attempts at the address that appeared to still be occupied. It submits the affidavits of process servers Kienzle and Wilson to detail the searches and service attempts made, and provide particular details of the due and diligent inquiry and well directed effort made into locating and serving Jin.

¶ 25    We agree with PNC that failure to attempt service at Jin's place of business did not render the service by publication void. *See Volpert*, 227 Ill.App.3d at 456 (finding no authority for defendant's argument that failure to ascertain and attempt service at his workplace rendered service by publication void.) In *Volpert*, the court also noted that the record did not indicate whether or where the defendant was working at the time of service by publication. *Id.* That is also the case here, where the special process server's affidavit does identify an acupuncturist license for Jin, but the search did not reveal a work address or whether any such address was current at the time of attempted service. The statutory requirements of 735 ILCS 5/2-203(a) do not state that PNC was obligated to locate and send a process server to Jin's place of business. Furthermore, Jin does not deny in his motion or affidavit that he was residing at and/or could have been found at either the Exeter and Hunt Property addresses in June and July 2019. Neither does Jin provide any other residential address where he could have been served at that time. Jin relies solely on the fact that

he allegedly had a work address at the time of attempted service, and, without providing any legal support for this contention, argues that PNC was required to attempt service at that address in order to satisfy the strict statutory requirements of due and diligent inquiry before moving for service by publication. PNC attempted service at Jin's last-known residential address, the Hunt Property, on various days and times, including outside of the time that Jin claimed to be at work. Jin does not explain why he was unable to be served at his alleged home at those times. He also does not address how he was working in Glenview, Illinois (the Milwaukee Property) Mondays through Saturdays while—according to his former counsel—allegedly living in East Lansing, Michigan. Without any evidence to support his claim that PNC failed to serve him at an address where he could have been found at the time—including, apparently, at the Milwaukee Property—he fails to show that the court improperly permitted service by publication or dismissed his Motion to Quash.

¶ 26    Jin argues that *Volpert* did not establish a blanket rule that attempting personal service at an individual defendant's place of employment was never necessary before resorting to service by publication. He distinguishes the present matter from the facts in *Volpert* on three points: (1) the record in *Volpert* did not indicate whether or where the defendant was working, while Jin filed an affidavit stating that he was working at the Milwaukee Property at the time of service by publication; (2) the plaintiff in *Volpert* attempted service at a location that was possible business address for the defendant, while PNC did not attempt service at the Milwaukee Property; and (3) in *Volpert*, the defendant's affidavit did not state that the plaintiff could have located him at his place of employment, while Jin's did. In further support of his position, Jin cites to three other cases which he claims are in accord with his position that service by publication is meant to be used as a last resort, and is disfavored over in-person service or service by mail.

¶ 27    In *Passalino v. City of Zion*, our supreme court found that notice by publication was insufficient to inform the individual plaintiffs of a meeting to address a proposed zoning amendment. 237 Ill. 2d 118, 127 (2005). The court noted that the Supreme Court had held that notice by publication was inadequate "only where 'it is not reasonably possible or practicable to give more adequate warning.'" *Id.* (quoting *Jones v. Flowers,* 547 U.S. 220, 237 (2006)); *see also Wells v. Village of Libertyville*, 153 Ill.App.3d 361, 367 (2d Dist. 1987) ("[N]otice by publication is not enough in cases where a person's legally protected interests are directly affected by the legal proceedings and the person's name and address are known or easily discerned.") It further found that the defendant City easily could have located the address of the land trustee by checking tax assessment records, and the trustee could have informed the plaintiff property owners. *Id.* at 128. The court therefore held that the City's failure to make an inquiry into the locations of the individual plaintiffs, and its publishing of the meeting information in two local newspapers, violated the procedural due process rights of the property owners who would be affected by the proposed zoning change. *Id.* at 130.

¶ 28    Jin does not provide any argument for why the present matter is factually similar to *Passalino*; indeed, it is not. PNC did locate two addresses at which Jin appeared to reside in 2019; the process server investigated the Exeter Property and found evidence that it was uninhabited, and then made four efforts to locate Jin at the Hunt Property. According to Jin's own prior counsel, Jin resided in Michigan at least soon after, if not during, the period of attempted service. No such address turned up in the process server's seven different approaches in researching Jin's location. The aforementioned search did not turn up a work address that appeared to be current to June and July of 2019. In this case, the process server clearly made multiple attempts to serve Jin personally

before PNC moved for leave to serve him by publication, as opposed to the *Passalino* defendant's failure to conduct a simple search of records which were accessible to it.

¶ 29    The next case Jin relies on is *In re Application of County Collector*, in which the plaintiff public guardian argued that a tax purchaser failed to comply with the "take notice" requirement of the Property Tax Code in acquiring a tax deed for a property owned by a mentally incapacitated individual who was hospitalized for schizophrenia. 217 Ill.2d 1, 3-5 (2005), *cert. granted*, *Estate of Lowe ex rel. Harris v. Apex Tax Investments, Inc.*, 547 U.S. 1145 (2006), *aff'd In re Application of the County Collector*, 225 Ill.2d 208, 212 (2007). Our supreme court held that the tax purchaser made the requisite reasonably diligent efforts in locating the owner despite failing to learn that she was hospitalized at the time, due to her mental illness. *Id.* at 37-39. The court noted that the Property Tax Code did not include specific provisions for adequate notice to hospitalized individuals, and it was beyond the court's authority to require hospitals to disclose patient information to purchasers in such situations, in violation of Illinois medical privacy laws. *Id.* at 40-41. While the present matter involves neither the notice requirements of the Property Tax Code nor the property owner's medical privacy rights, it also does not support the argument that PNC was required to attempt service at Jin's place of employment.

¶ 30    In *Rodriguez v. Brady*, a plaintiff arrestee challenged an order granting the defendant county State's Attorney's motion to dismiss his suit seeking the return of money that was seized through civil forfeiture. 2017 IL App (3d) 160439, ¶ 1. The State's Attorney's office had mailed the declaration of forfeiture to the plaintiff's home address, and the plaintiff argued that this notice was insufficient, where the office knew or should have known that plaintiff was incarcerated at the time, and no attempt was made to serve him in jail. *Id.* at ¶¶ 4-6. On appeal, the court agreed, holding that the plaintiff had sufficiently pled that the defendant violated his due process rights

where the defendant knew the plaintiff had been arrested, was unlikely to have been released by the time of the attempted notice, and could have easily been located by calling the jail to confirm. *Id*. at ¶¶ 29-30. The court considered whether, despite the defendant's compliance with the minimal requirements of the Drug Asset Forfeiture Procedure Act's notice provisions by mailing notice to his last given address, the notice satisfied constitutional due process requirements of being "reasonably calculated, under all the circumstances, to apprise interested parties" of the pending forfeiture. *Id.* at ¶ 25 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314). In the present matter, as discussed above, PNC's process server made a thorough search of Jin's last-known addresses, and attempted to serve the ones that appeared to be current at the time of the suit, which were the Exeter and Hunt Properties. Unlike the State's Attorney in *Rodriguez*, PNC was not attempting to serve Jin at an address it knew he was not residing in at the time, and it had no reason to believe he was located anywhere else. Even though the process server did find some information suggesting Jin had an active acupuncturist license in Illinois at the time, his time spent at work and out of the house certainly would not have prevented him from ever being served at home, in the way that incarceration would. If *Rodriguez* provides an example of attempted service that fails to protect the intended recipient's due process rights, the facts here do not suggest that any similar violation occurred.

¶ 31     As a final comment, we note that it appears from the record that the process server never attempted service by mail before PNC sought service by publication. While we find that the process server made a due and diligent inquiry into Jin's last known addresses, as well as a diligent effort to effectuate service in person at those addresses, we do not know why the circuit court did not address PNC's apparent failure to attempt service by mail. *See* 735 ILCS 5/2-203(a) (Service of summons on an individual must be made "by leaving a copy of the summons with the defendant

personally," or "by leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the contents of the summons, *provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode*.") (emphasis added.) We acknowledge that the process server's description of his attempts to locate Jin at either known address, as well as additional arguments by PNC, suggest that service by mail would not have been effective. Nevertheless, PNC had an absolute duty to follow the proper procedure for service prior to seeking service by publication— including mailing copies of the service to Jin's usual residence. However, Jin does not raise this argument on appeal, limiting his criticisms of PNC's efforts to serve him to only the failure to attempt to locate him at his place of business. As such, we deem any argument regarding failure to attempt service by mail to be waived. *See Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15 ("Generally, arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal.")

¶ 32    Jin does not provide any authority for his position that PNC was required to attempt service at his business address. His affidavit in support of his Motion to Quash does not include any evidence that the acupuncture business he claimed to work at in June and July 2019 was in operation despite the Illinois Secretary of State's records indicating that it had been dissolved almost a year prior. His affidavit also does not include the residential address he could have been served at in June or July 2019. If Jin seeks to successfully challenge PNC's representation of his last-known addresses in order to show that service by publication was improper, he must provide competent evidence suggesting PNC was in error. *See Bank of New York Mellon v. Karbowski*, 2014 IL App (1st) 130112, ¶ 16. We find that PNC made a due and diligent inquiry into Jin's last-

known location and sufficiently attempted service at those locations prior to moving for service by publication. The service by publication did not violate Jin's due process rights and properly gave the circuit court personal jurisdiction over Jin. Having found that service by publication was proper, we need not address PNC's alternative argument regarding actual controversy.

¶ 33                                         CONCLUSION

¶ 34     For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 35     Affirmed.